■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GARY LAMBERT, Respondent. — Appeal by the People from an order of the Supreme Court, Kings County (Ramirez, J.), entered February 3, 1981, which, after a hearing, granted defendant's motion to suppress physical evidence. Order reversed, on the law and the facts, and defendant's motion to suppress is denied. On July 11, 1980, at approximately 3:30 A.M., two New York City police officers, on radio patrol, received a radio run advising that a "male, black, wearing brown shorts, shirt with purple polka dots and a white towel around his neck" was "firing a gun" at the intersection of "Putnam and Reid". The officers responded to the radio run and, as they passed a grocery store at 209 Reid Avenue, which was not far from the intersection of Reid and Putnam, they observed several people in front of the store, adjacent to which was a garbage bin. One of the persons standing in front of the store and garbage bin was the defendant, who fit the description of the man described in the radio run. Two male blacks were seated on top of the garbage bin. As the officers approached the defendant, they observed him take a vinyl bag which he had been carrying and place it on top of the garbage bin, at which point one of the men seated on top of the bin pushed it behind him toward the back of the bin. During the ensuing frisk of the defendant, one of the officers discovered two live .38 shells. The defendant was told by the officer to stand by a fence which was six inches from the garbage bin. He then ordered the two men on top of the bin to get off and began to look for the vinyl bag. After a few seconds, the officer observed the vinyl bag under the fence. He testified that he retrieved it, that it was open and that he looked in and saw what appeared to be a gun. He gave the bag to his fellow officer, who took the gun out and arrested the defendant. In granting defendant's motion to suppress the gun — the bullets recovered during the frisk were not suppressed — Criminal Term held that the police officers acted commendably in frisking the defendant when they first approached him, and in continuing to look for a gun after finding the bullets on defendant's person. However, Criminal Term rejected the People's argument that the officers had the right to secure the bag in order to safeguard their own safety, by stressing the fact that defendant failed to make any furtive gesture with respect to the bag, and that the officers did not even conduct a frisk of the two males on top of the bin and between whom the vinyl bag had been placed by the defendant. Criminal Term made two other findings worthy of note, and which, on appeal, the People accept: (1) that defendant did not abandon the vinyl bag when he placed it on top of the garbage bin; and (2) that due to the "flexible" nature of the vinyl bag, "any individual with normal sensitivity in his fingers could feel the exact contours of the gun and * * * could easily tell that it was a gun". The People appeal from the order suppressing the gun. We reverse that determination and deny suppression of the weapon. The propriety of the police officers' action must be viewed separately at each stage of the developing scenario. Initially, the officers received a radio run, which gave the police a vivid and unique description of a man at a particular location who had fired a gun. Under these circumstances, when the officers arrived at the location and saw a man fitting the precise description given to them, they could reasonably believe — even without taking into account the somewhat furtive acts of defendant and his apparent confederates in placing the vinyl bag on the garbage bin and pushing it toward the back of the bin — that defendant

possessed a gun as reported and that the officers were in physical danger. Under these circumstances, the frisk or limited search of defendant for weapons in order to protect the officers was proper (see *People v McLaurin,* 43 NY2d 902; cf. *People v Benjamin,* 51 NY2d 267). Defendant's appellate counsel asserts that the police exceeded the permissible bounds of a frisk, when they reached into defendant's pocket and removed two live rounds of ammunition, after failing to ascertain the existence of a gun or any other weapon on defendant's person during the frisk (see *Peters v New York,* 392 US 40; *People v Sanchez,* 38 NY2d 72). Apart from the fact that defendant cannot, at this juncture, appeal from Criminal Term's refusal to suppress the bullets, the record clearly demonstrates that the officer conducting the frisk was able to determine that the small objects he felt during the frisk were bullets. Specifically, the officer testified that "I took my fingers and I felt both of them at the same time, and then I took my fingers and separated them. I felt the shapes and with my nails, I was able to depict the ridges on the rim of the shells and the nose on the front." We now reach the final aspect of the police conduct under inquiry herein, i.e., whether the police were justified in picking up the vinyl bag, and thereby discovering the gun. We are of the view that the officers did not exceed the constitutional strictures of the Fourth Amendment by their actions. The officers received a vivid and unique description of a man firing a gun at a particular location. When they confirmed all the details of this tip (except for the firing of the gun), they performed a frisk of the person, which was valid under *People v McLaurin* (43 NY2d 902, *supra).* The discovery of the live ammunition on defendant's person during the frisk served to add greater credence to the otherwise detailed tip, and increased the already existing fear of the officers for their physical safety. Under these circumstances, even assuming that the bag was closed, the officers took a proper precautionary measure for their own safety, when they picked up and "frisked" the bag, which was in defendant's possession at the time of his initial encounter, and into which the gun could easily have been transferred prior to the officers' arrival at the scene (see *People v McLaurin, supra; People v Correa,* 47 NY2d 807, 809; *United States v McClinnhan,* 660 F2d 500). Once the officers picked up the vinyl bag and were able to feel the outline of the gun due to the vinyl and the flexible nature of the bag, the officers acted properly when they reached in and retrieved the gun (see *Arkansas v Sanders,* 442 US 753, 764-765, n 13). Lazer, J. P., Rabin, Gulotta and Cohalan, JJ., concur.