■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v GLEN BELK, Respondent. — Appeal by the People from an order of the Supreme Court, Queens County (Browne, J.), dated July 18, 1983, which, after a hearing, granted defendant's motion to suppress physical evidence. ¶ Order reversed, on the law and the facts, the defendant's motion to suppress physical evidence is denied, and matter remitted to Criminal Term for further proceedings. ¶ On September 5, 1982, at 12:30 A.M., two plain-clothes police officers received a radio call (based upon an anonymous tip), of two black males carrying guns in the vicinity of 88th Avenue and Merrick Boulevard in Queens County. One of the gunmen was reportedly wearing a black jacket and the other a blue jacket. When the officers responded to the reported location, in an unmarked patrol car, they saw no one fitting the descriptions. The officers then canvassed the area and, while stopped at a traffic light two blocks from the reported location, they observed two individuals matching the descriptions cross in front of their vehicle. The officers exited from their car, identified themselves as police officers and asked to speak to the two individuals. When the officers inquired where the two men were coming from, defendant responded that he had just gotten off the Q-17 bus from The Bronx. Defendant's companion nudged him and told him it had been the Q-44 bus. Knowing that the Q-17 bus does not come from The Bronx, one of the officers ordered defendant to place his duffel bag on the ground and step back. While defendant and his companion were standing two feet from the bag, the officer pressed down on the nylon duffel bag and felt a hard L-shaped object which he believed to be a gun. The defendant and his companion were then ordered to turn around and face the wall as the officer opened the bag. Inside the bag, the officer found a loaded .22 caliber semiautomatic Luger. Defendant and his friend were subsequently frisked and placed under arrest. Approximately 10 minutes transpired between the time the officers received the radio call and the time of defendant's arrest. ¶ In granting defendant's motion to suppress the gun, Criminal Term held that while the police officers acted properly in stopping defendant for investigative purposes, the subsequent search of the duffel bag exceeded the scope of permissible police conduct. Criminal Term noted that once the bag was put

down two feet away from defendant, the officers were in no danger and the bag posed no threat to their safety. We disagree. ¶ The description provided by the informant's tip had been verified by personal observations of the officers within minutes of receiving the radio call. Thus, the officers were justified in detaining defendant and his companion for investigative purposes (*People v Elwell,* 50 NY2d 231; *People v Olsen,* 93 AD2d 824; *People v Sutton,* 91 AD2d 1051). Once defendant gave an inaccurate response to the officer's inquiry into his whereabouts, the officers took a proper precautionary measure for their own safety by separating defendant from the duffel bag and conducting a pat-down frisk of the bag (*People v Lambert,* 84 AD2d 849; *United States v McClinnhan,* 660 F2d 500). After feeling the L-shaped object, the officers clearly had reason to believe that a weapon was secreted in the bag and were presented with no suitable or safe alternative to a warrantless search of the bag. Merely separating defendant from the bag would only avert danger during the stop; "at some point they would be compelled to return the [duffel bag] to [defendant] and thus place themselves in the danger they sought to avoid" (*United States v McClinnhan, supra,* p 504). In view of these circumstances, and especially since the officers were informed that the suspects were armed, the officers acted prudently in searching defendant's bag. Brown, J. P., Niehoff, Rubin and Eiber, JJ., concur.