OPINION OF THE COURT
Wachtler, J.
We are once again concerned with the circumstances which must exist before a police officer can conduct a limited pat-down search of a citizen during a street encounter. The Appellate Division held that a loaded handgun was unlawfully seized and should be suppressed. We reverse.
On the evening of October 27, 1977, William Loran, a veteran police officer, was on motor patrol in the Borough of Queens when he received a radio run advising him that there were men with guns at a specified street location. He and his partner, both wearing plainclothes, arrived on the scene and left their unmarked car so that they could walk along the sidewalk. Approximately 30 people were gathered on the street. As they approached within 10 feet, the defendant, who was standing on the sidewalk, stepped backwards toward the curb while simultaneously reaching beneath his jacket with both hands to the rear of his waistband. Immediately, Officer Loran ordered the defendant to keep his hands in view, and conducted a limited pat-down search which produced the loaded weapon. At the suppression hearing Officer Loran said that his action was precipitated by the fear that “possibly [the defendant] had a gun secreted.”
Defendant moved to suppress the weapon on the ground that the frisk was conducted in violation of his constitutional right to be free from unreasonable searches and seizures. Officer Loran testified fully at the hearing as to the circumstances of the arrest, but there was no explanation in any detail of the source of the radio report which first alerted the police to the presence of the men with guns. The motion was denied and defendant pleaded guilty to criminal possession of a weapon in the third degree (Penal Law, § 265.02). With two Justices dissenting, the Appellate Division reversed on the *270 ground that the evidence should have been suppressed. The People now appeal.
At the outset we reaffirm that a stop and frisk is a more obtrusive procedure than a mere request for information or a stop invoking the common-law right of inquiry, and as such normally must be founded on a reasonable suspicion that the particular person has committed or is about to commit a crime (People v De Bour, 40 NY2d 210, 223; see Terry v Ohio, 392 US 1; CPL 140.50, subd 1; People v Cantor, 36 NY2d 106). We also note that an anonymous tip of "men with guns”, standing alone, does not justify intrusive police action, and certainly does not rise to the level of reasonable suspicion warranting a stop and frisk (People v De Bour, supra, p 224; People v Bronk, 66 Misc 2d 932, affd 31 NY2d 995). Therefore, immediately after the radio call, Officer Loran had at most only the common-law right to inquire, but no right or justification to subject any person at the scene to a search (People v Stewart, 41 NY2d 65). However — and this bears emphasis— nothing said thus far should be taken to indicate that a police officer is prevented from observing circumstances at the scene and, if necessary, taking due precaution for his own safety (People v Stroller, 42 NY2d 1052, People v Stewart, supra).
A police officer is entitled, and in fact is duty bound, to take action on a radio call. However, if a defendant later raises a legal challenge as to the permissible extent of such action, the People must take the initiative to show that in view of all the circumstances the action taken was justified (People v Lypka, 36 NY2d 210). This can be done by sufficient explanation of the source of the call and proof of its reliability (People v Lypka, supra) or alternatively by showing that the information conveyed was so specific and congruous with that which was actually encountered that its reliability reasonably could have been assumed (Draper v United States, 358 US 307; see People v McLaurin, 56 AD2d 80, 84 [dissenting opn], revd on dissenting opn 43 NY2d 902; People v Kinlock, 43 NY2d 832).
In either event, these cases illustrate that a radioed tip may have almost no legal significance when it stands alone, but that when considered in conjunction with other supportive facts, it may thus collectively, although not independently, support a reasonable suspicion justifying intrusive police action. The instant case demonstrates that this additional support can, as well, be provided by factors rapidly developing or observed at the scene.
*271 A police officer directed to a location by a general radio call cannot reasonably be instructed to close his eyes to reality— neither the officer nor justice should be that blind. The officer was rightfully and dutifully on the scene and could not ignore possible indications of criminality, nor is there any logical reason for him to reject the natural mental connection between newly encountered facts and the substance of the radio message. More importantly, there certainly is no justification for holding that an officer in such a situation cannot take note of a significant occurrence indicating a possible threat to his life, merely because the call which directed him to the scene was in and of itself an insufficient predicate for intrusive action against a particular person.
It is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband. It is equally apparent that law-abiding persons do not normally step back while reaching to the rear of the waistband, with both hands, to where such a weapon might be carried. Although such action may be consistent with innocuous or innocent behavior, it would be unrealistic to require Officer Loran, who had been told that gunmen might be present, to assume the risk that the defendant’s conduct was in fact innocuous or innocent. Such an assumption would be at odds with his reasonably acquired belief that he was in danger and his constitutionally authorized action (Terry v Ohio, supra). It would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety. Considering the totality of the circumstances, including the radio call and the information acquired by observation at the scene, there was an ample measure of reasonable suspicion necessary to justify the limited intrusion which produced the loaded revolver.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to that court for consideration of the facts (CPL 470.25, subd 2, par [d]; CPL 470.40, subd 2, par [b]).
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order reversed and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.