■ In the Matter of JAMIE D., a Person Alleged to be a Juvenile Delinquent, Appellant. — Order, Family Court, Bronx County (Mainzer, J.), entered November 3, 1980 adjudicating appellant a juvenile delinquent and placing him on probation for one year, is reversed, on the law, without costs and without disbursements, and the petition is dismissed. As the Corporation Counsel concedes, we are constrained in this case by the decision of the Court of Appeals in *Matter of Ricci S.* (34 NY2d 775), and accordingly, the adjudication must be reversed and the petition dismissed. Concur — Sandler, J. P., Silverman and Lynch, JJ. Ross and Lupiano, JJ., each dissent in separate memoranda as follows:

Ross, J. (dissenting). I concur with the dissenting opinion of Justice Lupiano, but would add the following observations. In a slightly different context where police officers were responding to a radio run of men with guns, the Court of Appeals instructed that, *inter alia*, the officers need not await "the glint of steel" (*People v Benjamin*, 51 NY2d 267, 271), before acting. Here a police officer was told by an identified informant that, while attempting to aid the victim of a crime, the informant's life was threatened in that he was told that his head would be blown off — a threat obviously implying the presence and possession of a gun(s). In investigating, Officer Burns, rather than finding a gun in the respondent's waistband, as his colleagues did in *Benjamin* (*supra*), discovered instead an equally dangerous and concealed weapon, a five-inch steak knife. To hold, as a majority of this court does, that this instrument is not

a dangerous knife (Penal Law, § 265.05), ignores the realities of life in this city. For, indeed, we are all aware that one thrust of this "steak" knife could inflict the same deadly results as the discharge of a bullet from a gun. This court's determination will, in effect, create a two-tiered analysis in a potential life-threatening situation where no distinction should be drawn.

Lupiano, J. (dissenting). Police Officer Burns testified that at approximately 5:30 P.M. on January 31, 1980, while he was in E. J. Korvette's (a department store), a woman entered shouting that there were boys outside with guns. Exiting the store, the officer was informed by one John Simpson that he had just attempted to help a youngster who was being robbed outside the store. The perpetrators told Simpson to "get away or we will blow your head off." Simpson pointed out the perpetrators who fled. The officer chased the youths and caught them with gun drawn and identifying himself as a police officer, Burns noticed that appellant had his hand *in his belt line*. When Burns told the youth to move his hand, the latter refused. Burns grabbed appellant's arm and, as he did so, observed a knife handle in appellant's belt. He removed the knife, which is described as the kind of knife usually found in the home for such purposes as cutting steaks, with a blade estimated by the court to be about five inches. Section 265.05 of the Penal Law does not define a "crime," but declares the possession of the prohibited object therein to be juvenile delinquency. Possession of "any dangerous knife" is prohibited by such section which applies solely to persons under 16. Study of the prior sections of the Penal Law from which the present section 265.05 is derived declares among the enumerated prohibited objects the following: "a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly instrument or weapon" (Penal Law, § 1897, L 1909, ch 88 as amd); "any * * * gravity knife, switchblade knife, cane sword" (Penal Law, § 265.05, subd 3, L 1969, ch 123); "or any dangerous knife" (Penal Law, § 265.05, subd 4, L 1965, ch 1030). The present statute, like its predecessors, is not unconstitutional because of vagueness, and the legislative intent appears clearly therein (see *People v Nieke,* 56 Misc 2d 363). It is well to note that "the Legislature is not required to explain its reasons for enactment of laws and has the authority to enact laws, provided they are constitutional and, in its wisdom, are necessary. The court must take the law as it is unless it violates some constitutional provision. The court may not legislate" (*Matter of Thomas F.,* 85 Misc 2d 791, 795, construing Penal Law, § 265.05). Further, the Practice Commentary in McKinney's to the present section contains the following important observation: "Like its predecessor, this new section does not define a 'crime' * * * Technically, it should not even be in the Penal Law but in the Family Court Act. Note that the predecessor section included also a prohibition against possession by a person under 16 years of age of the weapons and instruments barred by §§ 265.02(2), (4) and 265.01(1), but that this has been omitted from the instant version. No substantive change is effected thereby since conduct which would constitute a crime if committed by an adult is defined as juvenile delinquency when committed by a youth under 16 years of age (see Family Court Act § 712)" (Hechtman, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law, § 265.05, pp 480-481). With commendable candor, appellant's attorney sets forth in his brief: "Though the knife was found on appellant's person immediately following a report that he had engaged in a robbery, such circumstances are irrelevant as to whether the knife was a dangerous knife. Consideration of 'surrounding circumstances' had been previously sanctioned by the Appellate Division; however, the Court of Appeals has declined to accept that analysis. See *Matter of Ricci S.,* 34 N.Y.2d 775 (1974), rev'g. 41 A.D.2d 406 (1st Dept. 1973)". The Court of Appeals memorandum decision in *Matter of Ricci S.* (*supra,* p 776) is

comprised of two sentences and sets forth a conclusion without any specific rationale, to wit, "[a]n *unmodified* hunting knife with a five- to six-inch blade cannot be said to be a dangerous knife within the meaning of that subdivision [Penal Law, § 265.05, former subd 4]" (emphasis supplied). Nowhere in section 265.05 of the Penal Law or any of the prior sections from which it is derived, or in any related section, is there a definition as to what constitutes a "dangerous knife." By use of the term "unmodified" in *Matter of Ricci S.* (*supra,* p 776), it appears that the Court of Appeals has introduced an element of modification of the knife as the key element in concluding whether it is a "dangerous knife." Enlightenment proceeds from examination of the analysis of *Matter of Ricci S.* as occurred at the Appellate Division level prior to the subsequent appeal to the Court of Appeals (41 AD2d 406). The majority of this court utilized the "surrounding circumstances" approach in concluding that the knife was a dangerous knife in violation of what is presently section 265.05 of the Penal Law. The dissenting Justice, while not reaching this issue, opined that he "entertain(ed) a serious doubt as to whether the hunting knife here involved is a 'dangerous knife' (Penal Law, § 265.05, subd. 4) absent a showing that it was 'adapted for use primarily as a weapon' (Penal Law, § 265.15, subd. 4)" (41 AD2d, at p 408). Accordingly, it may fairly be observed that the basis for the Court of Appeals conclusion in *Matter of Ricci S.* (*supra*) is reliance upon subdivision 4 of section 265.15 of the Penal Law with its aspect of modification of the prohibited object. Section 265.15 of the Penal Law is entitled "Presumptions of possession, unlawful intent and defacement." It provides in subdivision 4, in pertinent part: "The possession by any person of any dagger, dirk, stiletto, dangerous knife or any other weapon, instrument, appliance or substance designed, made or *adapted for use primarily as a weapon,* is presumptive evidence of intent to use the same unlawfully against another" (emphasis supplied). This subsection is derived from prior sections 1897, 1897-b, 1898 and 1898-a of the Penal Law. Said section 1898 derived from section 411 of the Penal Code. It was unanimously held by the Court of Appeals that section 1898 of the Penal Law (now embodied within subdivision 4 of section 265.15 of the Penal Law) applies *only where intent is an element of the offense and does not* inject intent as an element where it is not made so by section 1897 (the predecessor, in part, of Penal Law, § 265.05) (*People v Persce,* 204 NY 397). In that case it was aptly noted (pp 401-402) that "[t]he section relied on [then section 1897, presently embodied in subdivision 4 of section 265.15] must be regarded as making possession evidence of *an intent to use* only in those cases where such intent is a necessary element of the crime as provided by the first section [that part of the first paragraph of section 1897 which relates to carrying or possessing a dagger, etc., 'with intent to use the same unlawfully against another,' presently embodied in section 265.01]. It is not to be construed as requiring evidence of an intent to use where the crime as defined by the preceding section is made out without proof of any such intent * * * The legislature has the undoubted power to declare that various acts, not theretofore so, shall be criminal without proof of other intent as a necessary ingredient of the offense than the intent to commit the prohibited act" (emphasis supplied). It is concluded therefore that under section 265.05 of the Penal Law the Legislature has seen fit to view mere possession of a "dangerous knife" by a person under 16 years of age as an act of juvenile delinquency. All that is required respecting the issue of intent is the intent to possess, *not* the "intent to use the same unlawfully against another". Possession of a "dangerous knife * * * with intent to use the same unlawfully against another" constitutes not juvenile delinquency, but a crime, to wit, "Criminal possession of a weapon in the fourth degree" (Penal Law, § 265.01, subd [2]). In order to prove *the intent*

*to use the dangerous knife unlawfully against another* under section 265.01, the People may utilize the provisions of subdivision 4 of section 265.15 of the Penal Law and show that the "dangerous knife" is specifically "designed, made or adapted [modified] for use primarily as a weapon". Note that in all these sections (265.01, 265.05 and 265.15, subd 4), the object is referred to as a dangerous knife. It is clear, therefore, that the Legislature regarded a knife as a possibly dangerous object regardless of the fact that a particular knife might be "designed, made or adapted [modified] for use primarily as a weapon". To impute the requirement of subdivision 4 of section 265.15 of the Penal Law that the "dangerous knife" be one "designed, made or adapted for use primarily as a weapon" onto section 265.05 would result in holding that *any knife* designed or made for primarily an innocent and lawful purpose could not, *under any circumstances,* constitute a "dangerous knife" within the meaning of section 265.05 of the Penal Law, unless such knife was adapted or modified by the holder in some manner for use primarily as a weapon. Such a view is myopic and, in effect, would legislate a very narrow definition of "dangerous knife" in terms of mere possession. Common sense and reason relate that many common objects, as, for example, a steak knife with a five-inch blade, may be utilized for evil and unlawful, as well as innocent and lawful purposes. Consequently, the knowing and voluntary carrying of a steak knife with a five-inch blade by a person under 16 years of age may, under the surrounding circumstances, be construed as lawful and innocent, or may indicate that the person possesses a "dangerous knife" within the ambit of section 265.05 of the Penal Law so as to constitute juvenile delinquency. Clearly a steak knife with a blade approximately five inches in length may be the instrument of the infliction of fatal or serious injury on a person (see, e.g., Gonzales, Vance, Helpern & Umberger: Legal Medicine [2d ed], pp 335-359 [Appleton-Century-Crofts, Inc., N. Y., 1954]; Maloy: Legal Anatomy and Surgery, [2d ed, Callaghan & Company, Chicago, 1955], pp 85-86, 360-361). Such knife may be defined as a sharp-bladed individual knife with a serrated or nonserrated edge for cutting steaks and other firm meats. The carrying of a steak knife with a five-inch blade in one's belt where it is readily accessible to use on the public streets in the context of purported robbery, flight and apprehension, coupled with an effort to conceal the presence of such knife by holding one's hand over it and persisting in such endeavor despite a proper order from a police officer to remove one's hand, evinces an aura particularly instinct with the element of danger as it pertains to such knife. Undoubtedly, the possession of the dangerous knife herein by a person under 16 years of age under the surrounding circumstance is within the ambit of section 265.05 of the Penal Law. In contemplation of the aforesaid, having due regard for the Court of Appeals fully delineated rationale in *People v Persce (supra)*; the absence of a fully articulated rationale to that court's later succinct holding in *Matter of Ricci S. (supra)*, other than the adjective "unmodified" applied to the knife therein; and having due regard for the legislative function and society's interest in a common-sense, reasoned and realistic application of section 265.05 of the Penal Law, it is concluded that *Matter of Ricci S. (supra)*, may be an anamoly and, absent further elucidation by the Court of Appeals, should not be "blindly" adhered to (cf. *Matter of Chidi N.,* 65 AD2d 688). Nowhere in the statute (Penal Law) or even in *Matter of Ricci S. (supra)*, is the mere length of the blade held to be the sole determinative factor. Respect for the doctrine of *stare decisis* is firmly rooted in my judicial philosophy. Apart from the results of in-depth research and analysis above set forth, I would fully indorse the majority position that we are constrained by the decision of the Court of Appeals in *Matter of Ricci S. (supra)*. However, the research and analysis

engaged in compels me to conclude that respect for said doctrine mandates according the Court of Appeals decision in *People v Persce* (*supra*) equal binding effect. Until the Court of Appeals itself resolves this circumstance, deferment to their judicial precedents warrants at this juncture the conclusion that *Matter of Ricci S.* (*supra*), be viewed in narrow fashion as at most restricted to the precise fact pattern presented therein. As the knife herein is not a hunting knife, and as both cases — *Persce* and *Ricci S.* — purport to be viable judicial precedents, and whereas *Persce* is a fully delineated opinion while *Ricci S.* is a two-sentence virtual ipse dixit, it is concluded that the doctrine of *stare decisis* requires the instant exercise of judicial responsibility to afford the Court of Appeals a further opportunity to clarify its position on this issue. The final order of disposition, Family Court, Bronx County (Mainzer, J.), entered November 3, 1980, which adjudicated the appellant a juvenile delinquent and placed him on probation for the period of a year, made after a fact-finding determination (Torres, J.), on November 3, 1980, which found that appellant had committed acts constituting unlawful possession of a weapon by a person under 16 years of age (Penal Law, § 265.05), should be affirmed, on the law, without costs.