■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAFAEL REYES, Respondent. — Order, Supreme Court, New York County (Neco, J.), entered October 15, 1981, granting defendant's motion to suppress physical evidence and the order (same court, Haft, J.), entered November 16, 1981, dismissing the indictment, unanimously reversed, on the law and the facts, the motion to suppress denied, the indictment reinstated and the case remanded to Supreme

Court for further proceedings. On review of the record, we disagree with the finding of the suppression court that there was "no suspicious activity" when the plainclothes officers encountered defendant and Blass. To the contrary, the testimony of Officer Hadzelis, the only witness on the motion to suppress, clearly established that the police officers observed defendant and his companion peering into several buildings on the block as they proceeded along East 94th Street in Manhattan at about 7:00 P.M. The plainclothes officers, who were on an anticrime patrol in an unmarked car, maintained surveillance for about 20 minutes, observing defendant and Blass stop outside of about five to seven buildings and peer into hallways from the dark areas of the block, until they stopped in front of 219 East 94th Street. Defendant and his companion, each, separately, went into the building and exited twice, whereupon they picked up a piece of furniture which was next to some garbage cans in the front of the building and carried it inside. The officers approached the building on foot to investigate. They observed the two men coming down the stairs as they reached the inner door of the building, noticing that Blass had money in his hand. As defendant opened the inner door, the officers identified themselves, told the men not to move and asked where they were coming from. At the time, Officer Hadzelis had his shield in his hand and Officer Bauman had his gun drawn. In response to the inquiry by the police, Blass stated: "I have a knife in my belt." Defendant responded by backing up 15 to 20 feet, and by placing his left hand to the rear of his pants, whereupon Officer Hadzelis grabbed him and patted him down, discovering a loaded .25 caliber revolver inside his left rear pants pocket. We find on this record that the underlying circumstances and the conduct of defendant were sufficient to have aroused the reasonable suspicions of the officers that a crime was about to be committed. Police Officer Hadzelis had 14½ years' experience on the force, including anticrime patrol. Defendant's actions support the conclusion that he and Blass were "casing" the building with a view toward burglary. The conceded facts authorized a stop, detention and inquiry (*People v Chestnut*, 51 NY2d 14; *People v Benjamin*, 51 NY2d 267; *People v De Bour*, 40 NY2d 210). The action by the police here was no more intrusive than was the conduct sustained in *People v Chestnut* (*supra*). There, the court found that the gunpoint seizure was analogous to a "stop and frisk" and did not constitute an arrest, to be judged by the traditional notion of probable cause. Under the facts of this case, the stop and frisk was a proper response to the actions by defendant in backing up 15 to 20 feet and in reaching to the rear of his waistband. In *People v Benjamin* (*supra*, p 271), the court took cognizance of the use of the waistband as a place to secrete a weapon: "It is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband. It is equally apparent that law-abiding persons do not normally step back while reaching to the rear of the waistband, with both hands, to where such a weapon might be carried." In considering the issue, we are mindful of the necessity in dealing with the difficult area of such street encounters, to consider all of the circumstances to determine whether the action by the police was reasonable. The judicial function is not fulfilled, as was observed in *People v Chestnut* (51 NY2d, *supra*, at p 23), by an "attempt to dissect each individual act by the policemen". Thus, under the circumstances, the fact that the officer had drawn his gun before inquiring as to defendant's reason for being in the building, does not compel a contrary result. In evaluating the propriety and reasonableness of the actions by the police, we must take cognizance of the realities of urban life in relation to the dangers to which officers are exposed daily, which often require split-second decisions, with life or death consequences. The observation by the court in *People v*

*Benjamin* (*supra,* p 271), is instructive, to wit, that "[i]t would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety." Here, the officers proceeded appropriately, with caution, after having observed defendant and his companion for an extensive period of time as they cased the block. Their actions were unquestionably suspicious, as they moved in and out of the building twice and then re-entered carrying a discarded piece of furniture, which could be some type of cover-up. All of this amounted to furtive activity. Certainly, the conduct warranted further investigation and inquiry. When confronted by the officers, defendant moved away from them and reached with his left hand toward his rear waistband, a place commonly used to conceal a weapon. The conduct, in response to the limited inquiry by the police and considering the totality of the circumstances, justified the seizure and the pat-down to ascertain whether defendant was armed. Accordingly, we conclude that the motion to suppress the weapon should have been denied and, therefore, the indictment, charging defendant with criminal possession of a weapon in the third degree as an armed felony (Penal Law, § 265.02), should be reinstated. Concur — Sandler, J. P., Carro, Silverman, Bloom and Kassal, JJ.