THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN BOND, Appellant.

First Department, March 13, 1986

**APPEARANCES OF COUNSEL**

*Colleen P. Cassidy* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Deborah Hickey* of counsel *(Mark Dwyer* and *Howard Brom-berg* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

CARRO, J.

This appeal poses the question of whether the information contained in an anonymous tip, that a young black male, walking west on 137th Street, between Fifth and Lenox Avenues, wearing a blue coat, carrying a brown paper bag and possessing a gun, is in and of itself sufficient to establish reasonable suspicion that a crime is being committed and that the responding police officers are in danger of injury so as to justify a forcible stop and immediate frisk of any person matching the description. Absent the observation of attendant circumstances which would provide objective, independent proof of the reliability and accuracy of the information, exigent circumstances or an unusually detailed and accurate description of the person to be stopped, we hold that such an anonymous tip is, as a matter of law, insufficient to warrant a forcible stop and frisk and warrants only a police officer's common-law right to stop and make inquiry. Any conduct more intrusive than a temporary stop to inquire is constitutionally infirm. Because the police officers here, acting only on the strength of this generalized anonymous tip, adopted the more intrusive, unwarranted action of a forcible stop and frisk, defendant's motion to suppress the weapon seized as a result of that unconstitutional frisk must be granted.

The facts of this case are basically undisputed, and we do not disturb the findings of fact made by the hearing court. At approximately 9:14 A.M. on January 3, 1984, Officers Pelegrino and Visco were in their radio patrol car at 135th Street when they received the transmission, derived from an anonymous source, that a young black male, walking west on 137th Street between Fifth and Lenox Avenues, wearing a blue coat and carrying a brown paper bag, had a gun. The officers immediately proceeded to the corner of Lenox Avenue and 137th Street, where they spotted defendant almost at the corner, walking westbound. He wore a blue jacket and dungarees and carried a shopping bag. Pelegrino radioed central communications to obtain a further description of the suspect, but received only the original transmission.

The officers observed no unusual conduct on the part of

defendant and saw no bulge on his person to indicate a concealed weapon. Yet, without making any inquiry, they approached defendant with guns drawn and ordered him to freeze and put his hands up against a car. While Pelegrino pointed a gun at him, Visco frisked defendant. Visco felt a bulge in defendant's waistband and removed a gun. Visco also found six bullets in a pocket of the jacket. Officer Gray soon arrived in his patrol car and arrested defendant. He searched defendant's bag and recovered marihuana. Later, at the precinct, defendant was questioned and stated that he had bought the gun on the street.

Suppression of the gun and statement was denied, and on April 19, 1984, defendant pleaded guilty to attempted criminal possession of a weapon in the third degree, in satisfaction of the indictment. A sentence of 2 to 4 years in prison was imposed on May 31, 1984. Defendant was also convicted of violation of probation and sentenced to a concurrent term of 1 to 3 years in prison.

The touchstone by which to measure police conduct in any 4th Amendment case is reasonableness. *(Cady v Dombrowski,* 413 US 433, 439; *People v Prochilo,* 41 NY2d 759, 761.)* When the predicate for a forced street encounter is police receipt of anonymous telephone information, the proper method by which to determine reasonableness "is to examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion on the individual." *(People v Stewart,* 41 NY2d 65, 66; *see also, People v De Bour [La Pene],* 40 NY2d 210, 222; *People v Cantor,* 36 NY2d 106, 111.)*

The predicate authorizing an officer's common-law right to interfere with a person's liberty, short of a forcible seizure, and make inquiry is a founded suspicion that criminal activity is afoot. *(People v De Bour [La Pene], supra,* at p 223.) To justify a forcible stop, the predicate for the encounter must be of sufficient quality to support a finding of reasonable suspicion that the person has committed, is committing or is about to commit a crime, and a frisk in such a situation is warranted only if the officer reasonably suspects that he is in danger of physical injury from the detained person. (CPL 140.50 [1], [3]; *People v De Bour [La Pene], supra,* at p 223.) What constitutes reasonable suspicion "is the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand." *(People v Cantor, supra,* at pp 112-113.)

In the context of police responses to tips of armed suspects, we have had the occasion to conclude most decidedly that "a telephone call from an anonymous source furnishing a general description and location of a 'man with a gun' * * * does not, by itself, constitute reasonable suspicion to stop and frisk anyone who happens to fit that description". *(People v Bruce,* 78 AD2d 169, 172; *see also, People v Benjamin,* 51 NY2d 267, 270; *People v Stewart, supra,* at p 69; *People v De Bour [La Pene], supra,* at pp 223-224.) Rather, such information only furnishes the police officer with the common-law right to inquire. It is only when that information is considered in conjunction with the attendant circumstances and exigencies, as observed by the police during the encounter, that a general tip and those observations may collectively support a finding of reasonable suspicion so as to legitimatize a more intrusive police response. *(People v Benjamin, supra,* at p 270; *People v De Bour [La Pene], supra,* at p 225; *People v Bruce, supra,* at p 172.)

In some rare instances, the information contained in a radio run may on its own provide reasonable suspicion, but only if it is "so specific and congruous with that which was actually encountered that its reliability reasonably could [be] assumed *(Draper v United States,* 358 US 307; see *People v McLaurin,* 56 AD2d 80, 84 [dissenting opn], revd on dissenting opn 43 NY2d 902; *People v Kinlock,* 43 NY2d 832)." *(People v Benjamin, supra,* at p 270.) Alternatively, the information relayed may present a situation of such grave danger as to sustain a finding of reasonable suspicion that a crime has been, is being or will be committed, thereby justifying more intrusive measures. Thus, "where the report indicates that the person has used the weapon to menace or threaten or will use the weapon if stopped for questioning or the weapon has such potential destructive power as to dispel any possible legitimate possession, then personal and public safety may well mandate a more intensive police intrusion." *(People v De Bour [La Pene], supra,* at p 225.)

With these guidelines in mind, we hold that the information supplied here, even in conjunction with all attendant circumstances, fails to meet that quantum of evidence necessary to support a determination of reasonable suspicion and permit the immediate frisk to which this defendant was subjected. The information was not specific and did not give such a unique description of the suspect and his acts so as to render it inherently trustworthy and reliable. The description of a

black male with a blue coat carrying a brown paper bag on a busy street in Harlem during the morning hours, when many people may be going to work or purchasing goods, is hardly unique. Neither did the information convey any warning of grave danger. There was no report that the suspect had or was about to commit a crime, that he was acting in a menacing or threatening manner with the gun, or that he possessed a gun which could have no possible legitimate use.

To be contrasted is *People v Kinlock* (43 NY2d 832), where the information furnished was of a black male, named Leroy, six feet tall, wearing a long plaid coat with a fur collar, standing at the corner of 142nd Street and Rockaway Boulevard, armed with a rifle. Defendant Kinlock matched the description exactly, was at the precise location and answered to the name Leroy. Similarly distinguishable are the following: *People v McLaurin* (43 NY2d 902 [black man with a red jacket and sneakers, walking with a limp and armed with a gun was about to enter a building late at night]); *People v Seppinni* (77 AD2d 852 [black man at a bar wearing a beige suit with a flower in his lapel was armed with a pistol and "looked like he was hunting to shoot someone tonight"]); *People v Sustr* (73 AD2d 582 [light-haired white man, wearing a silver jacket was said to be standing on a specified corner with a gun and was " 'out to kill people' "]).

Even when we consider the radio run information in conjunction with the attendant circumstances and observations of the police officers, we still fail to discern anything which would elevate the danger component of this situation and permit the more intrusive conduct resorted to herein. Defendant, who matched the general description, except that he wore a jacket, not a coat, and held a shopping bag, not just a bag, was observed walking at a normal gait and in an unsuspicious manner. The officers observed no unusual or furtive conduct, there were no visible signs of a weapon, it was broad daylight and there were two police officers at the scene, with another team on its way.

The only factor the People can point to as possibly invoking a greater need for caution on the part of the police is the fact that this incident occurred in what the police labeled as a high-crime area. On this very point the conclusions of Justice Fein in the recent case of *People v Bronston* (113 AD2d 627) are dispositive. Justice Fein concluded that behavior susceptible of an innocent interpretation, but occurring in a high-crime area, does not permit "a greater level of intrusion than

is warranted by the same behavior in other areas: *supra,* p 633). Therefore, the fact that defendant was walking in a normal manner in a high-crime area, carrying a shopping bag, did not give the police any more right to frisk him than if this situation had occurred in a low-crime area.

It is clear to us, therefore, that this record is barren of any objective evidence which could have provided the police with reasonable suspicion that a crime was being committed and that they were in danger of physical injury. These facts stand in clear contrast to *People v Benjamin (supra),* where, in answer to a tip of a man with a gun, the police officers encountered a crowd of people near defendant, who, upon seeing the police officers, reached with both his hands beneath his jacket to the rear of his waistband (51 NY2d, at p 267). A different set of facts was also presented in *People v Williams,* reported with *People v. Stewart* (41 NY2d 65, *supra).* There, the anonymous caller informed the police that a man named Donald had a gun. One of the police officers answering the call recognized the defendant as Donald Williams, with whom he had had previous encounters. The same officer further noticed a bulge on the defendant's person which, based on his experience, he determined was a gun. Clearly, these attendant circumstances warranted the ensuing frisks in each of the cases.

Quite distinguishable from those cases, but more on point with the one at bar, is *People v La Pene,* reported with *People v De Bour* (40 NY2d 210, *supra).* In *La Pene,* the police received a tip, from an anonymous source, that a black male, wearing a red shirt, at a specified bar had a gun. The police entered the bar, saw defendant, who was wearing a red shirt and behaving in a nonsuspicious manner, and immediately proceeded to frisk him. The Court of Appeals held that this stop and frisk was unconstitutional, based as it was on an anonymous general tip uncorroborated by events at the scene and not necessitated by any exigency *(supra,* at pp 223-224). This is exactly the conclusion we draw here. The gun obtained must therefore be suppressed as the fruit of this illegal search, as must defendant's statement, which was made almost immediately after his arrest and was thereby tainted by the unconstitutional police conduct. *(Wong Sun v United States,* 371 US 471, 486, 488; *People v Stewart, supra,* at p 70.) Since the prosecution has no other evidence against defendant, the conviction must be reversed and the indictment dismissed.

Furthermore, it is apparent from the sentence minutes that

the court's finding of violation of probation on indictment No. 1324 of 1982 was based on the instant conviction, which we now vacate. Accordingly, the violation of probation must also be reversed.

Judgment of the Supreme Court, New York County (Jerome W. Marks, J.), rendered May 31, 1984, after a plea of guilty, convicting defendant of attempted criminal possession of a weapon in the third degree, in satisfaction of indictment No. 82-84, and sentencing him to 2 to 4 years in prison and revoking defendant's probation on indictment No. 1324-82 and substituting a concurrent prison term of 1 to 3 years, is unanimously reversed, on the law, the motion to suppress granted, indictment No. 82-84 dismissed, the violation of probation on indictment No. 1324-82 reversed, and probation reinstated.

MURPHY, P. J., MILONAS, ROSENBERGER and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, rendered on May 31, 1984, unanimously reversed, on the law, the motion to suppress granted and indictment No. 82-84 dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required, and the violation of probation on indictment No. 1324-82 is reversed, and probation reinstated.