Bellacosa, J.
(dissenting). I would affirm the Appellate Division order upholding the conviction for criminal possession of a weapon in the third degree. Inasmuch as sufficient evidence was adduced at the hearing to support the lower courts’ findings that the police officers acted on verified detailed information and in their reasonable self-protection, the order of the Appellate Division should be affirmed (see, People v Salaman, 71 NY2d 869, 870-871; People v Jones, 69 NY2d 853, 855).
The court accepts for purposes of addressing the frisk of the bag with the gun that the basic stop and frisk of the person of the defendant were justified by a reasonable suspicion of ongoing criminality and, alternatively, by an articulable basis for the officers to fear for their safety. I thus proceed directly to the safety-based justification for also removing and securing the nylon bag, reportedly containing a gun, from the front seat of the defendant’s car. The finely spun and bifurcated analysis of the majority may work in the cloister, but it does not work and is not warranted for the hard streets. The dangers may be "far-fetched” (majority opn, at 230) to Judges in the protected enclave of the courthouse, but not to cops on the beat.
The conclusion by the reversing Judges is necessarily made as a matter of law, and it thus displaces the undisturbed, supportable lower courts’ findings of over-all reasonableness as to the police action in these circumstances. That conclusion substitutes a disembodied, retrospective judgment that the police officers here lacked a reasonable basis, in light of this particularly dangerous street encounter, to complete their concededly lawful approach and frisk by unrealistically and unnecessarily curtailing the officers’ authority to reach for and secure the reported weapon to insure their own contemporaneous safety (see, People v Salaman, 71 NY2d 869, 870, supra; People v De Bour, 40 NY2d 210, 223; see also, Adams v Williams, 407 US 143; Terry v Ohio, 392 US 1, 27).
*233 The Appellate Division in this case affirmed the denial of suppression on a record establishing that the approach to this defendant was reasonably predicated on a very detailed anonymous tip taken and corroborated in many relevant details by two homicide detectives pursuant to what I accept in law and in the majority’s assumption as a lawful and official obligation to investigate. The tip included the defendant’s sex; ethnicity; large size; specific clothing; current activity; nickname; car make, model and color; that he was located at 116th Street and Third Avenue in Manhattan in a barber shop; that he was carrying a shoulder bag; that the hag contained a gun; and that he was a homicide suspect. The officers’ investigation corroborated all these details except the nickname, suspect status and gun possession. Based upon the number and specificity of the confirmed details and the character of the details yet to be corroborated — an armed homicide suspect named "Poppo” — the officers responded to the scene; saw defendant exit the barber shop with a companion; saw that the defendant was carrying the reported shoulder bag allegedly containing the gun; and saw him get into the black Cadillac Eldorado. Only then did they have an opportunity to approach, which they did with guns drawn. They ordered defendant to step out of the car, where he had only been momentarily seated, and frisked him. The majority nevertheless formalistically and arbitrarily draws a line against reasonable completion of the investigation and precautionary procedures. It condemns the officers for almost simultaneously reaching in to retrieve the shoulder bag from the front car seat where it had been placed only moments before when the suspect entered the car with it. Once the weight and outline of a gun were felt through the bag’s nylon material, the encounter escalated to probable cause and the police searched the bag and found the loaded revolver (see, People v Stewart, 41 NY2d 65, 66; People v De Bour, 40 NY2d 210, supra). Yet, the reversers unreasonably suppress the gun.
A police officer’s concededly lawful duty to investigate includes the right to protect his or her own survival, based commonsensically and reasonably on safety concerns not only for the officer but also for innocent bystanders; this embraces the right to frisk for weapons when the officer has a reasonably record-justified belief that the suspect may be armed (see, People v Salaman, 71 NY2d 869, 870, supra; People v Benjamin, 51 NY2d 267, 270; People v McLaurin, 56 AD2d 80, revd on dissenting opn 43 NY2d 902). A frisk for weapons, in turn, *234 encompasses personal property capable of or reported as concealing a weapon within the suspect’s grabbable reach (see, People v Brooks, 65 NY2d 1021, 1023; People v Davis, 64 NY2d 1143, 1144; People v Pugach, 15 NY2d 65, 69).
The acknowledged duty to investigate, plus the right to inquire, plus the right to frisk authorized in this case, also includes, in my view, the concomitant right to frisk the bag in this case. Three theories support this reasonable action. First; under a realistic view, the present case partakes mostly of a street and only incidentally and fortuitously of a vehicle encounter because of the unity and contemporaneity of defendant’s person and the bag with the gun on the street. This particular bag was part of this person’s aura and, as such, falls flat within the majority’s primary rationale recognizing the legality of the frisk of the person (majority opn, at 231, n 4). As such, this is not a People v Belton (55 NY2d 49) automobile category search and we should not allow a hardening of the search categories to mechanically control and to displace the distinctive analytical composition of this fact pattern. Second, the real threat to these officers, acknowledged by the majority as a proper basis for a frisk of defendant, is in no respect dissipated or attenuated where the container within which a weapon is reportedly secreted is immediately and proximately accessible to the suspect upon reentering or even just reaching into a car (see, People v Lindsay, 72 NY2d 843, 845). Finally, the frisk of the bag was proper under Michigan v Long (463 US 1032). Indeed, "if the police officer possesses a reasonable belief based on 'specific articulable facts which, taken together with the rational inferences from those facts, reasonably warrant’ the officer in believing that the suspect is dangerous” and that a weapon may be contained within the car, the authorization for the expanded frisk is self-evident (id., at 1049, quoting Terry v Ohio, 392 US 1, 21). The police here are in at least as much danger, if not more, than police throughout this country. Thus, in these particular circumstances, there is no justification for bestowing a different and more onerous and far more dangerous rule of reason, operative only in the State of New York and based only on our State Constitution.
Thus, this case is not controlled by the postarrest, probable cause, automobile exception and container standards of People v Belton, but rather is supported in an indirect way by that case and its most recent progeny (55 NY2d 49, supra, on remand 453 US 454, revg 50 NY2d 447; see also, People v *235 Blasich, 73 NY2d 673). Belton was the occupant of a car stopped for speeding and he was arrested for marihuana possession. Relying on the automobile search exception, we upheld a subsequent warrantless search of the car and of Belton’s jacket, which was on the back seat, even though the occupants had been separated, arrested, searched, removed to a point distant and there was no evidence the arresting officer feared for his safety. The far different fact and legal category scenario here was that of a stop and frisk performed by officers investigating the detailed report of an armed homicide suspect. The predicate for frisking Torres — safety concerns arising from the presence of a weapon in the shoulder bag of a reported homicide suspect — was not increased or diminished by the incidental involvement of the automobile. The removal of the bag from its temporary resting place — not discernibly different from a park bench or car fender or hood for Fourth Amendment purposes or even for our article I, § 12 State Constitution purposes — does not implicate Belton and should not require a higher threshold for preventative protective measures.
Highly detailed information reported to the police and manifestly based on personal knowledge, corroborated in every observable aspect and coupled with yet-to-be confirmed data that the suspect is a violent felon — armed and suspected of murder — provides more than an adequate basis for upholding the reasonableness of the officers’ safeguarding actions (see, People v Lindsay, 72 NY2d 843, supra; People v Russ, 61 NY2d 693, 695; People v Benjamin, 51 NY2d 267, 270, supra; People v Kinlock, 43 NY2d 832; People v McLaurin, 56 AD2d 80, read on dissenting opn 43 NY2d 902, supra; People v Stroller, 42 NY2d 1052). The two courts below have so found and this court has no reasonable basis in law or in fact to conclude contrariwise (People v Harrison, 57 NY2d 470, 477).
I understand and accept that the majority is expressly not deciding but only assuming the legality of the threshold stop and frisk authorization — deeming it valid in order to use a separate dispositional path. To my mind, however, there is little question that firm legal authorities support the legality of the stop and frisk here and, thus, if we were to confront that issue, I would be on the opposite side of the views expressed in Judge Alexander’s separate concurring opinion.
Courts should face the reality of the day and gauge the reasonableness of police officers’ conduct in these circum *236 stances in the full light of that harsh glare (cf., People v La Pene, 40 NY2d 210). It is not reasonable to hold that police officers — thrust into this kind of emergency situation where their official duty obligates them to act and where the difference between life and death is often measured in seconds— must differentiate on the spot between finely spun legal doctrines of authority to frisk based on a multiple choice test of the available categories. This case proves the point and turns the tactical and very dangerous advantage over to the suspected criminal. The officers’ and innocent bystanders’ safety concerns are not alleviated, in law and certainly not in fact, by a frisk of the person only, in this circumstance given the continuing, frighteningly real nature of the threat presented by the accessibility of the gun as soon as the defendant might reenter or reach into the car. The attribution of unreasonableness, of unreliability, and of suspicion in a gun-homicide case condemning police safeguarding actions based on especially detailed anonymous warnings and reports is not founded in empirical data or in sound legal principles. The majority rule allows persons, reasonably suspected of carrying a gun in a bag to avoid a frisk of the container by merely dropping the bag through a car window and unnecessarily leaves the investigating officer holding a different bag of continuing jeopardy.
Whether we dislike generally the police procedure of approaching vehicles with drawn weapons and without announced inquiry in the dangerous setting of cases like this is not determinative because those particular facets, even if viewed as unjustified in hindsight or even if viewed as preferable precautionary procedure — and I do not accept either in this case — do not eliminate the reasonable basis for the police acting as they were supposed to and as they did in their own and in others’ safety, under valid precedents and under all the evidence adduced (see, Michigan v Long, 463 US 1032, supra; People v Lindsay, 72 NY2d 843, supra; People v Salaman, 71 NY2d, 869, 870, supra; People v Chestnut, 51 NY2d 14).
Chief Judge Wachtler and Judges Simons, Kaye and Hancock, Jr., concur with Judge Titone; Judge Alexander concurs in result in a separate opinion; Judge Bellacosa dissents and votes to affirm in another opinion.
Order reversed, etc.