■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID LEWIS, Appellant. [598 NYS2d 330] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Tomei, J.), rendered June 11, 1991, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

The hearing court correctly denied that branch of the defendant's omnibus motion which was to suppress the gun found in the pocket of the defendant's coat. The evidence adduced at the hearing established that on November 24, 1990, at approximately 11:30 P.M., Police Officers Dennis Hannon and Joseph Fisk responded to a radio transmission that a male had been shot at 180 Troy Avenue, apartment 13-G, in Brooklyn. After noticing blood in the hallway in front of the elevator, the police heard arguing and loud music coming

from apartment 13-G, and knocked on the door. Their knock was answered by a woman. Officer Hannon asked her if anyone in the apartment had been shot. The woman said that no one had been shot, but allowed the police to enter and check for themselves. Upon entering the apartment, Officer Hannon observed at least 25 people. There was loud music and arguing going on, a situation Officer Hannon described as "pretty chaotic". The police continued to the rear of the apartment and walked into a bedroom which had a door that was half-way open.

The defendant and two other persons were in the bedroom when the police entered. Officer Hannon testified that the defendant looked startled when he saw the police and dropped his coat. Since he was standing about three feet away from the defendant, Officer Hannon heard a loud "thunk", leaned over to pick up the coat, and felt the outline of a gun in the pocket area where he heard the sound. He then reached into the pocket, removed the gun, and placed the defendant under arrest.

The facts and circumstances of each case determine the reasonableness of each search and seizure (see, People v Smith, 59 NY2d 454; People v De Bour, 40 NY2d 210). Here, the police had lawfully entered into the premises with the consent of the occupant in order to investigate a suspected shooting in the apartment. In light of the defendant's reaction upon seeing the police, and given all the attending circumstances, Officer Hannon was justified in feeling the outside of the defendant's coat pocket in order to determine whether the thud he heard was made by a gun (see, People v Rivera, 165 AD2d 756, 758). After feeling the object which he reasonably believed to be a gun, it was clearly proper for him to reach into the pocket and seize the weapon (see, People v White, 156 AD2d 741, 742; Matter of Mark Anthony G., 169 AD2d 89, 93). The police action in the case at bar fully met the reasonableness standard, as it was justified at its inception and reasonable in scope (see generally, United States v Sharpe, 470 US 675; Terry v Ohio, 392 US 1; People v Hicks, 68 NY2d 234).

We have considered the defendant's remaining contention and find it to be without merit. Ritter, Pizzuto and Santucci, JJ., concur.

Eiber, J. P., dissents and votes to reverse the judgment appealed from, on the law and the facts, to grant that branch of the defendant's omnibus motion which was to suppress the gun, and to dismiss the indictment, with the following memorandum: I disagree with my colleagues' conclusion that the

pat-down search of the defendant's jacket, which was not preceded by even a minimal inquiry, was reasonable in this case.

At bar, the People's sole witness at the suppression hearing was Officer Dennis Hannon, who indicated that he and his partner received an anonymous radio report of a "male shot" at 180 Troy Avenue, apartment 13-G. Responding to the report, Officer Hannon and his partner proceeded to the subject apartment building, and took the elevator to the thirteenth floor. Upon arriving on the thirteenth floor, they observed "blood in the hallway right in front of the elevator". From this location, they could hear the sounds of music and voices, and the officers walked "around the bend" and followed these sounds to apartment 13-G. The officers knocked on the apartment door, and Officer Hannon asked the woman who answered the door "Is there anyone shot here?" When she replied that no one had been shot, Officer Hannon asked, "Can we come in and check and make sure, because there is blood in the hallway?" The woman responded, "sure. No problem. Come on in. There is no one shot here".

When Officer Hannon entered the apartment, he observed about 25 people gathered in the living room for a party, and he noted that "[t]here was music; there was arguing going on". After walking through the living room, the officers entered a rear bedroom where the defendant and two or three other people were standing. The defendant was in the process of taking off his leather jacket, and in Officer Hannon's words, "we saw the Defendant * * * and he saw me and was startled and he dropped his coat and I heard a loud 'thunk' ". Officer Hannon further explained that the defendant was startled "because he didn't know we were there". Upon hearing the "thunk", Officer Hannon believed "that there was something in" the defendant's jacket. While the defendant stood about three feet away from the officer, Officer Hannon picked up the defendant's jacket and felt the outline of what he believed to be a gun in a jacket pocket. After removing a gun from the jacket, Officer Hannon placed the defendant under arrest.

It is beyond cavil that a police officer "is entitled, and in fact is duty bound, to take action on a radio call" *(People v Benjamin,* 51 NY2d 267, 270). However, where a defendant raises a challenge to the permissible extent of such action, the People have the burden of demonstrating that the action taken was justified *(see, People v Benjamin, supra; People v Lypka,* 36 NY2d 210). Upon review of the record in the present case, I cannot conclude that the People met their

burden of establishing that Officer Hannon's pat-down search of the defendant's jacket was justified.

Generally, because a frisk or pat-down search is a more intrusive procedure than a mere request for information or a stop invoking the common-law right of inquiry, such a search must be founded on reasonable suspicion that a suspect has committed or is about to commit a crime *(see, People v Hollman,* 79 NY2d 181; *People v Benjamin, supra; People v De Bour,* 40 NY2d 210). The scope of a valid stop and frisk may additionally include examination of "personal items capable of concealing a weapon within the suspect's grabbable reach 'as an incident to an inquiry upon grounds of safety and precaution' " *(People v Brooks,* 65 NY2d 1021, quoting from *People v Pugach,* 15 NY2d 65, 69).

However, where, as here, police officers are acting on an anonymous tip, reasonable suspicion sufficient to justify a pat-down search of a suspect exists only where that anonymous tip contains an " 'unusually detailed and accurate description of the person' " or is accompanied by " 'attendant circumstances which would provide objective, independent proof of the reliability and accuracy of the information [or] exigent circumstances' " *(Matter of David B.,* 172 AD2d 828, 829; *People v Batash,* 163 AD2d 399, 400; *People v Bond,* 116 AD2d 28, 29). Since the radio transmission received by Officer Hannon contained no description of the alleged suspect, his pat-down search of the defendant's jacket can properly be found to have been justified only if the attendant circumstances were such as to provide objective, independent proof of the reliability and accuracy of the information contained in the transmission. No such attendant circumstances are present in this case.

Although the record indicates that the officers observed blood near the thirteenth floor elevator, they had no information connecting that blood with the alleged shooting in apartment 13-G. The woman who answered the door of apartment 13-G denied that anyone had been shot, and readily allowed the officers free access to the apartment to confirm her claim. While Officer Hannon described the situation inside the apartment as "pretty chaotic", the "chaos" was attributable to the party in progress, and the officers observed no signs of criminal activity.

Thus, when Officer Hannon entered the bedroom and encountered the defendant in the process of taking off his jacket, he still lacked objective evidence to confirm the report that an individual had been shot inside the apartment. That confirma-

tion was not supplied by the "thunk" Officer Hannon heard when the defendant, startled by the officer's abrupt entry into the bedroom, dropped his jacket. Hannon's testimony contained no indication that he observed a recognizable outline of a gun, or even a discernable bulge, in the defendant's jacket pocket. Moreover, he never indicated that he believed the "thunk" was reminiscent of the sound of a gun striking the floor. Rather, the officer merely stated that based upon the "thunk" sound, he suspected that there was "something" in the defendant's jacket. Although in some circumstances the sound of a heavy metallic object hitting the ground may alert police to the possibility that a suspect is in possession of a weapon (e.g., *People v Rivera,* 165 AD2d 756; *People v White,* 156 AD2d 741), here there was no testimony that the object in the defendant's jacket made a distinct metallic thud indicative of a gun, and the "thunk" sound which Officer Hannon described could have been caused by the presence of a completely innocuous item (see, *People v Sanchez,* 38 NY2d 72; *Matter of D'Angelo H.,* 184 AD2d 1039). That the defendant was startled into dropping his jacket when the officers entered the bedroom is of no moment, since such a reaction was not an unnatural response to the officers' sudden and unexpected entry into the room, and did not confirm the accuracy of the anonymous radio report. Further, it is significant to note that after the defendant's jacket fell to the ground, he remained still, and there was no testimony that he moved his hand toward the jacket, which might have been construed by the officer as a reaching for a weapon (see, *Matter of David B., supra; cf., People v Benjamin, supra).* Under these circumstances, some inquiry was a necessary predicate to a pat-down search of the jacket (see, *Matter of David B., supra; People v Yiu C. Choy,* 173 AD2d 883).

I note that the majority's reliance upon this Court's decision in *People v White (supra),* is misplaced. In that case, the defendant was frisked because he matched the description of a perpetrator of an armed robbery. The defendant's bag made a metallic sound when it struck the ground, and one of the responding officers picked it up, and discovered an object which felt like a gun. Under these circumstances, this Court concluded that the officer properly opened the bag to verify his reasonable belief that it contained a gun, noting that "[t]he police action in the instant case fully met the reasonableness standard as it was justified at its inception and reasonable in scope" *(People v White, supra,* at 742). The *White* case is however, factually distinguishable, since the

officers stopped the defendant and his companions because they matched the description of the armed robbers which the police had obtained from the complainants. The arresting officer in *White* thus had a reasonable basis to believe that the defendant had just committed an armed robbery, and that the metallic sound made when the defendant's bag hit the ground was a gun. Here, however, Officer Hannon lacked reasonable suspicion to believe that the defendant was armed.

Similarly, while *People v Rivera (supra),* also cited by the majority, contains a reference to the sound of dropping metal alerting police officers to the possibility of a weapon, in that case the suspicious sound simply prompted the officers to ask the suspects to hold out their hands. Thus, *Rivera* does not support the majority's conclusion that Officer Hannon was justified in conducting a pat-down search of a suspect's jacket without inquiry.

Consequently, I vote to suppress the gun, which was seized in violation of the defendant's constitutional rights, and to dismiss the indictment.