# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

7

KA 12-01345

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, DEJOSEPH, AND SCUDDER, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                         MEMORANDUM AND ORDER

HIKEME WILLIAMS, DEFENDANT-APPELLANT.

---

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (KRISTEN MCDERMOTT OF COUNSEL), FOR DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (ROMANA A. LAVALAS OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Onondaga County Court (Joseph E. Fahey, J.), rendered August 1, 2011.  The judgment convicted defendant, upon his plea of guilty, of menacing a police officer or peace officer, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and resisting arrest.

It is hereby ORDERED that said appeal from the judgment insofar as it imposed sentence on the conviction of criminal possession of a weapon in the third degree is unanimously dismissed and the judgment is affirmed.

Memorandum:  Defendant appeals from a judgment that convicted him, upon his plea of guilty, of menacing a police officer or peace officer (Penal Law § 120.18), criminal possession of a weapon in the second degree (§ 265.03 [3]), criminal possession of a weapon in the third degree (§ 265.02 [3]), and resisting arrest (§ 205.30).  We agree with defendant that "the waiver of the right to appeal is invalid because the minimal inquiry made by County Court was insufficient to establish that the court engage[d] the defendant in an adequate colloquy to ensure that the waiver of the right to appeal was a knowing and voluntary choice" (*People v Jones*, 107 AD3d 1589, 1589, *lv denied* 21 NY3d 1075 [internal quotation marks omitted]).  Although the invalid waiver of the right to appeal thus does not encompass defendant's further contention that the court erred in refusing to suppress the weapon and defendant's statements to the police as fruit of the poisonous tree, we nevertheless reject that contention.

The evidence at the suppression hearing established that, on the date of the incident, police officers were dispatched to 322 Hatch Street at 6:12 a.m. based on a 911 call reporting "a suspicious person with a weapon."  The suspect was described as a black male, wearing a

black, hooded sweatshirt and a white "do rag," who was in possession of a silver handgun.  As the responding officer turned his patrol vehicle onto Hatch Street, he received another dispatch stating that "the suspect was still in possession of the handgun and standing on the front porch of 322 Hatch Street."  When the officer arrived at 322 Hatch Street, he observed a black male, later identified as defendant, wearing a black, hooded sweatshirt and a white "do rag."  Defendant was the only person in the vicinity, and he was standing only 15 feet away from the porch of 322 Hatch Street.  The responding officer exited the patrol vehicle and shielded himself with the door.  At that point, defendant was standing at a 45-degree, "bladed" angle toward the officer and, although his left hand was visible, his right hand "was concealed in the waistband of his pants or the front of his sweatshirt."  The officer "ordered [defendant] to remove his right hand and show [the officer] his right hand and lay on the ground." When defendant refused, the officer unholstered his firearm, keeping it down at his side, and again ordered defendant to show his hands. Defendant refused to do so and fled, prompting the officer to pursue him.  After defendant lost his balance and fell, a struggle ensued, during which defendant removed a handgun from his waistband and pointed it at the officer's midsection.  The officer was able to disarm defendant, at which time defendant was arrested.  Following his arrest and the issuance of *Miranda* warnings, defendant made inculpatory statements, and the police identified the woman who had called 911.

The court refused to suppress the weapon or the statements, finding that the caller was "[a]n identified citizen informant" and thus provided the responding officer with probable cause to arrest defendant.  The court also found that, even if the facts and circumstances did not amount to probable cause, the responding officer was justified in forcibly detaining defendant based on his reasonable suspicion that defendant had a gun and, also, based on the officer's need to "take reasonable self-protective measures to ensure his safety and neutralize the threat of physical harm."

On appeal, defendant contends that the court erred in determining that the caller was an identified citizen informant and that the responding officer was justified in forcibly detaining him when the officer ordered defendant to show his hands and lie down on the ground.  The People contend that defendant's challenge to the nature of the caller is not preserved for our review, but we reject that contention inasmuch as the court " 'expressly decided the question raised on appeal,' thus preserving the issue for review" (*People v Smith*, 22 NY3d 462, 465, quoting CPL 470.05 [2]; *see People v Riddick*, 70 AD3d 1421, 1423, *lv denied* 14 NY3d 844).  Although we agree with defendant that the 911 caller was an anonymous caller at the time the responding officer forcibly detained defendant (*see Navarette v California*, ___ US___, ___, 134 S Ct 1683, 1687-1689; *cf. People v Van Every*, 1 AD3d 977, 978, *lv denied* 1 NY3d 602), and that "defendant was seized within the meaning of the Fourth Amendment" when the responding officer ordered him to show his hands and lie down on the ground (*People v Gonzales*, 86 AD2d 634, 635), we nevertheless conclude that the officer was justified in forcibly detaining defendant "based on

the contents of a 911 call from an anonymous individual and the confirmatory observations of the police" (*People v Argyris*, 24 NY3d 1138, 1140, *rearg denied* 24 NY3d 1211, *cert denied* ___ US ___ [Jan. 11, 2016]; *see People v Williams*, 126 AD3d 1304, 1305, *lv denied* 25 NY3d 1209; *cf. People v Moore*, 6 NY3d 496, 499-500).

Although "a radioed tip may have almost no legal significance when it stands alone, . . . when considered in conjunction with other supportive facts, it may thus collectively, although not independently, support a reasonable suspicion justifying intrusive police action" (*People v Benjamin*, 51 NY2d 267, 270).  Here, as in *Benjamin*, that "additional support can, as well, be provided by factors rapidly developing or observed at the scene" (*id.*).  The evidence at the hearing established that " 'the report of the 911 caller was based on the contemporaneous observation of conduct that was not concealed' " (*Williams*, 126 AD3d at 1305; *see Argyris*, 99 AD3d at 810).  Upon the officer's arrival, defendant was positioned at a bladed angle toward the officer with his hand in his waistband or sweatshirt pocket, " 'common sanctuar[ies] for weapons' " (*People v Smith*, 134 AD3d 1453, ___, quoting *People v Burnett*, 126 AD3d 1491, 1494).  In our view, this case is indistinguishable from *Benjamin*.

"A police officer directed to a location by a general radio call cannot reasonably be instructed to close his eyes to reality--neither the officer nor justice should be that blind.  The officer was rightfully and dutifully on the scene and could not ignore possible indications of criminality, nor is there any logical reason for him to reject the natural mental connection between newly encountered facts and the substance of the radio message.  More importantly, there certainly is no justification for holding that an officer in such a situation cannot take note of a significant occurrence indicating a possible threat to his life, merely because the call which directed him to the scene was in and of itself an insufficient predicate for intrusive action against a particular person" (*Benjamin*, 51 NY2d at 271).  In accordance with Court of Appeals' precedent, we conclude that "it would be unrealistic to require [the responding officer], who had been told that [a] gunm[a]n might be present, to assume the risk that the defendant's conduct was in fact innocuous or innocent.  Such an assumption would be at odds with his reasonably acquired belief that he was in danger and his constitutionally authorized action . . . It would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety" (*id.; see People v Allen*, 73 NY2d 378, 380; *cf. Burnett*, 126 AD3d at 1494).

"Given the extremely short period of time between the report of [the man with a gun] and the arrival of the [responding officer] on the scene, defendant's presence [in proximity to the porch] and the absence of any other individual in the vicinity, the [officer was] justified in forcibly detaining defendant in order to quickly confirm or dispel [his] reasonable suspicion of defendant's possible [possession of a weapon]" (*People v Stroman*, 107 AD3d 1023, 1024, *lv denied* 21 NY3d 1046; *see Benjamin*, 51 NY2d at 270).  We thus conclude that the court properly refused to suppress the weapon and defendant's

ensuing statements.

In light of defendant's resentencing on the conviction of criminal possession of a weapon in the third degree, we do not consider his challenge to the severity of the original sentence imposed on that count, and we dismiss the appeal from the judgment to that extent (*see People v Richardson*, 128 AD3d 1377, 1379, *lv denied* 25 NY3d 1206; *People v Haywood*, 203 AD2d 966, 966, *lv denied* 83 NY2d 967). Contrary to the final contention of defendant, the bargained-for sentence on the remaining counts is not unduly harsh and severe.

Entered:  February 5, 2016                      Frances E. Cafarell
                                                Clerk of the Court