■ The People of the State of New York, Appellant, v Andre Rivera, Respondent.—Order, Supreme Court, New York County (Marks, J.), entered October 25, 1985, which, after a hearing, granted the defendant's motion to suppress a loaded weapon in a one-count indictment charging criminal possession of a weapon in the third degree, unanimously reversed, on the law, the motion denied and the matter remanded for further proceedings.

At approximately 12:30 A.M. on the morning of June 1, 1985, Officer Brian Linkletter was on radio patrol with his partner in a marked patrol car headed eastbound on 112th Street in the East Harlem section of Manhattan. While their car was stopped at the traffic light at 112th Street and Second Avenue, the defendant, Andre Rivera, walked across the intersection directly in front of them. As to the ensuing events, Officer Linkletter testified at the suppression hearing as follows: He observed 2½ inches of a holster protruding from underneath the right side of the defendant's short jacket as defendant walked in front of the police car. The defendant tried to cover the holster by pulling his coat down over it as he walked in front of the car. Linkletter recognized it as a gun holster because he owned some like it and had run across such

holsters numerous times. The officer could see "It was something in there" and that "[the defendant] had the belt through here [on the holster] so this was bulging out with the gun here". Both officers stepped out of the car, directed defendant to raise his hands in the air, and Linkletter walked over to him. Placing his hand on the holster, he guided defendant to and leaned him against a mailbox. He lifted the defendant's jacket, unbuttoned the holster, and removed the holster from the belt. The holster contained a loaded, operable .38 caliber revolver. The defendant testified on his own behalf in support of the motion to suppress. He testified that he had no prior arrests, had been robbed in his store located at 115th Street and Third Avenue a few times, and was walking home carrying $800 in store receipts on the morning in question when the officers stepped out of the car with their guns drawn and searched him, without asking any questions. He denied that his jacket had ridden up.

The suppression court granted the motion to suppress, holding, in reliance upon *People v Johnson* (54 NY2d 958 [1981]), that observation of a portion of the holster provided a sufficient basis only for stopping the defendant to ask a question. The court apparently credited the officer's testimony that he observed half of the holster extending from underneath the defendant's jacket and a "telltale" bulge. Criminal Term summarized this testimony, and a portion of the defendant's testimony, without expressly crediting the testimony of either witness, prior to ruling on the motion. It distinguished cases involving the outline of a gun, and distinguished *People v Samuels* (50 NY2d 1035, *cert denied* 449 US 984 [1980]) on the ground that the defendant here made no furtive movement which gave the officers reason to believe he was dangerous. Thus, the court impliedly rejected the testimony concerning the defendant's attempt to conceal the holster. Criminal Term found the act of wearing a holster at the waist susceptible of innocent interpretation as knives of legal size, pens, pencils, or keys are also carried in holsters. The court ruled that the arrest and search were unreasonable because "The man was not doing anything that was criminal in nature where the police had to be afraid of what would happen; you had two police officers". Accepting the findings of fact made by the court, we disagree and reverse.

The issue presented is whether the predicate for the police action justified the extent of the police intrusion on the privacy of the individual. We cannot agree that the "passive" or "victimless" nature of the criminal act perceived by the

officers rendered an arrest inappropriate. In our view, the police officers acted reasonably in the circumstances. *(People v Prochilo,* 41 NY2d 759, 761 [1977].) It is common knowledge that guns may be carried in holsters attached to belts worn at the waist. Officer Linkletter's personal observation of a portion of a gun holster, of a type with which he was familiar, containing an object that made it bulge, protruding from the bottom of defendant's jacket, provided a substantial, objective, and reasonable basis for his belief that the defendant was armed. We believe a *Terry* stop and frisk *(Terry v Ohio,* 392 US 1, 27 [1968]) is authorized where, as here, the officer's personal observation of the defendant provides a reasonable basis for suspecting he is armed.

*People v Johnson (supra)* and *People v Samuels (supra),* the cases relied upon by the suppression court, are inapposite. Those cases stand for the proposition that the act of purchasing a holster only permits an officer to approach the purchaser, identify himself, and make an inquiry. *(See also, People v Clarke,* 60 NY2d 568 [1983].) They are in sharp contrast to the present case where, as discussed *supra,* there was ample evidence to warrant the police action.

The officers acted reasonably in drawing their guns before confronting the defendant late at night on a deserted street, based upon their reasonable belief that he was armed. Police officers may take precautions to ensure their own safety based upon circumstances observed at the scene. They are patently not required to assume the risk that equivocal conduct is in fact innocuous or innocent. *(People v Benjamin,* 51 NY2d 267, 271 [1980].) To the best of their knowledge, the defendant's possession of the gun was unauthorized and unlicensed and, thus, was presumptively with the intent to use it unlawfully. (Penal Law § 265.15 [4].) "It would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety." *(People v Benjamin, supra,* p 271.)

If we were not reversing the determination of Criminal Term solely on the basis of the findings made, we would, in accordance with our power to make new findings of fact, find that the search was also warranted in light of the circumstance of the furtive gesture. We would find that probable cause to stop and frisk was present since Linkletter saw the defendant wearing a highly suspicious object, and then observed him make an apparent attempt to conceal the object. "[D]eliberately furtive actions * * * at the approach of strangers or law officers are strong indicia of *mens rea,* and when

coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." *(Sibron v New York,* 392 US 40, 66-67 [1968].) Concur—Murphy, P. J., Carro, Lynch, Rosenberger and Wallach, JJ.