OPINION OF THE COURT
Frederic S. Berman, J.
An indictment has been filed against the defendant, Willie Harmon, charging him with criminal possession of a weapon in the third degree, in violation of Penal Law § 265.02 (4).
Defendant, claiming to be aggrieved by an unlawful or improper search and seizure of evidence, has made a motion to suppress such evidence in the pending criminal action, and to suppress certain statements he made after arrest.
This case presents an interesting and somewhat unique issue of law. Does the touching of a bag containing a loaded weapon, which bag is not in the actual possession of the *338 defendant at the time of the touching, constitute a violation of defendant’s protection against an unlawful search and seizure?
A combined Mapp and Huntley hearing was conducted on October 19, 1990. Police Officer William Chian testified for the People. The defendant did not testify or produce any witnesses in his own behalf.
Based on the testimony of Officer Chian, which this court finds credible, the following findings are made.
FACTS
On July 3, 1989 at approximately 6:55 p.m. Police Officer Chian and his partner Police Officer Kirby were patrolling in uniform in their marked patrol car when they received a radio communication that there was a "man with a gun” at 112th Street between Park and Lexington Avenues. At 112th Street and Park Avenue, Officer Chian observed three persons standing near the rear of a maroon automobile. Other than an undercover patrol car, there were no other individuals in the immediate vicinity. As Officer Chian got out of his radio motor patrol car, and approached the maroon vehicle, the three individuals stepped back. Officer Chian noticed a brown vinyl bag on the trunk of the maroon car and a holster lying on the ground where the men had stood. Officer Chian placed his hand on the outside of the vinyl bag and felt the outline of a gun.
He immediately proceeded to open the bag in which he found a loaded weapon. Officer Chian then placed the three individuals, including the defendant, under arrest. The three individuals were taken to the station house, and placed in a holding cell. Approximately an hour and a half later, Officer Chian removed the arrested individuals one at a time to read them their Miranda rights. After the defendant was given his Miranda warnings, he signed the officer’s memo book stating that he understood his rights, and responded by saying: he "was looking for thirty guys”, that he "didn’t want to mess-up the other kids’ lives”, that he had "already messed up” his own life, and that the gun belonged to him.
MOTION TO SUPPRESS STATEMENTS
The People have the burden of proving beyond a reasonable doubt that the alleged statements attributed to the defendant *339 were voluntary on his part. (People v Pobliner, 32 NY2d 356; People v Valerius, 31 NY2d 51.)
I find that the reading of the Miranda rights was timely and properly executed. The defendant understood his rights and freely, intelligently, and voluntarily waived them before making his statements. The defendant’s motion to suppress the statements is therefore denied.
MOTION TO SUPPRESS WEAPON
The propriety of the search is a more complicated issue determined by the interplay of the numerous factors involved in this situation.
A defendant who challenges the legality of a search has the burden of proving the illegality. However, the People have the burden of going forward to show the legality of the police conduct in the first instance. (People v Berrios, 28 NY2d 361; People v Di Stefano, 38 NY2d 640.)
In the instant case, the officers were responding to a radio run describing a specific crime at a specific location. Thus, the police had a reasonable suspicion that a particular crime had occurred. Once they could connect that suspicion to a particular person (CPL 140.50 [1]), they would be authorized to conduct a forcible stop of that person within the meaning of Terry v Ohio (392 US 1). The presence of the holster, and the absence of other individuals at the location supplied the necessary connection to suspect these particular individuals.
In addition, the particular suspected criminal activity — man with a gun — elevates the argument that the officer could reasonably have feared for his safety. Although the men had stepped a few steps back, it would still have been possible for any one of them to lunge for the bag and grab any weapon contained therein. Thus, the officer not only had authority to stop, but also authority to frisk. (CPL 140.50; Terry v Ohio, supra.)
In fact, the officer did not immediately proceed to what would arguably have been a permissible next step, i.e., a frisk or "pat down” of the persons present. Instead he proceeded with the less intrusive alternative of patting the outside of the bag which was not at the time in the actual possession of the defendant.
It should be noted that the presence of the holster is highly significant. "[T]he purchase of a holster is directly suggestive of the presence of a gun.” (People v Samuels, 50 NY2d 1035, *340 1037.) Although the presence of a holster alone would not permit more than an inquiry, if coupled with a furtive gesture, an obviously false answer, a reasonable fear for safety, or a bulge, a pat down of the person would be justified. (People v Samuels, supra; People v Clarke, 60 NY2d 568; People v Rivera, 121 AD2d 939; People v McEachin, 148 AD2d 551; People v Jarvis, 142 AD2d 600.)
In People v Rivera (supra), the First Department felt that the mere presence of a holster protruding 2 V2 inches from under defendant’s waist length jacket, accompanied by a bulge, justified two police officers ordering the defendant at gunpoint to raise his hands in the air, lean against a mailbox, and allow one officer to lift his jacket and remove the holster which did indeed contain a gun. Despite the fact that the trial court in Rivera (supra, at 941) made a finding of fact, that there was no furtive gesture, the Appellate Division still felt that the "officers acted reasonably in the circumstances” within the meaning of People v Prochilo (41 NY2d 759, 761).
"Police officers”, the Rivera court continued, "may take precautions to ensure their own safety based upon circumstances observed at the scene. They are patently not required to assume the risk that equivocal conduct is in fact innocuous or innocent. * * * 'It would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety.’ ” (People v Rivera, supra, at 941, quoting People v Benjamin, 51 NY2d 267, 271; see also, People v Livigni, 88 AD2d 386, affd 58 NY2d 894.) In Livigni, the presence of an empty holster on the front seat of a car justified ordering the occupants out of the car at gunpoint.
Here all three men backed away from the holster and the vinyl bag when they saw the uniformed officer approach. This can be interpreted as a furtive gesture. All three men, upon seeing the marked patrol car stop and the uniformed officer advance, reacted in the same way. For whatever reason, they each consciously or unconsciously attempted to disassociate themselves with the activities at hand and the contents of the bag, thus, providing the officer with the logical inference that the bag must contain the suspected illegal gun. "[Djeliberately furtive actions * * * at the approach of strangers or law officers are strong indicia of mens rea” (Sibron v New York, 392 US 40, 66).
Based on these four factors: the radio run, the danger to the officers, the holster, and the furtive gesture, it is clear that *341 Officer Chian’s limited intrusion of patting the outside of the vinyl bag was entirely justified. The feel of the outline of the gun then justified opening the bag, and the recovery of the gun justified the arrest of the three individuals.
A strong argument could be made that, under the circumstances of this case, it would not even have been improper for the officer to have touched the bag if it was actually on the person of the defendant. In this case, the bag was not actually on his person but, instead, was situated on the trunk of a car, some feet away from where the defendant had moved as the officer approached.
Given the facts herein, it is not even necessary to consider the question of whether the bag had been abandoned as was argued by the prosecution.
In no way did the conduct of the police violate the defendant’s protection against an unlawful search and seizure.
Accordingly, defendant’s motion to suppress the gun is denied.