*948 OPINION OF THE COURT
Edward A. Sheridan, J.
Defendant, indicted on one count of criminal possession of a weapon in the third degree (Penal Law § 265.02), moves to suppress a loaded .25-caliber automatic pistol, an ammunition clip with six rounds, two shoulder holsters, a briefcase and two statements made to the arresting police officer. Pursuant to Mapp v Ohio (367 US 643) and People v Huntley (15 NY2d 72), the court conducted an evidentiary hearing on October 19 and 20, 1992. The People called one witness, Police Officer James Howard; the defense called the defendant.
FINDINGS OF FACT
On May 13, 1992, at about 7:10 p.m., Police Officer Howard, a five-year member of the police department who had made about 200 arrests, including 20 gun arrests, was on scooter patrol, in uniform, eastbound on 42nd Street, Manhattan. He stopped the scooter opposite 233 West 42nd Street, a novelty store that sells shoulder holsters, knives and jewelry. From a distance of 80 to 100 feet, through the glass door and windows of the store, he observed an individual, subsequently identified as defendant, Gregory Me Gill, apparently purchasing a shoulder holster. Defendant was standing in the aisle of the store facing the left counter as Howard observed him try on a shoulder holster that fit under the defendant’s left shoulder. As defendant was handing cash to the storekeeper, Howard made a U-turn onto the westbound side of 42nd Street and stopped in the vicinity of the novelty store. Defendant, attired in a blue blazer and slacks with orange shirt and floral tie, came out of the store, looked eastward in Howard’s direction and then back and forth along the street, and began to walk eastbound carrying an attaché case and a box of donuts. Howard, his gun bolstered, got off the scooter, approached defendant on the sidewalk one door east of the novelty store, and asked whether he could speak with him to which, he testified, defendant assented. Howard told defendant that he had seen him try on a holster and asked whether he was carrying a gun. Defendant, polite and cooperative, said he was not. Howard then testified that he asked defendant if he would mind if he patted him down and checked out his briefcase to which he testified the defendant again assented. No questions as to identification, address or destination were asked. Howard patted defendant down under the shoulders *949 and about the waist without result. Defendant did not resist and continued to cooperate, was not evasive and made no furtive motions. A second police officer arrived and stood by as Howard then picked up the attaché case which had been placed on the ground by defendant, opened the flap, looked inside and saw a shoulder holster for a large caliber gun. Defendant then stated words to the effect, "See, I bought the holster, but I don’t have a gun on me.” Howard then noticed a side compartment and felt a small hard object inside. He opened the compartment and saw a .25-caliber automatic pistol, which he determined to be loaded, encased in a shoulder holster. Howard took the pistol out and put it into his pocket. Defendant then told Howard he had an extra clip in his front pants pocket, which Howard seized. Defendant was then placed under arrest.
While at the Midtown South Precinct, at about 7:20 p.m., Howard administered Miranda warnings to defendant. After agreeing to answer questions, Me Gill said that he had bought the pistol in White Plains because he is a social worker in the South Bronx. He also said that he had bought the holster for a friend, another social worker, who has a .357-caliber revolver.
CONCLUSIONS OF LAW
Street encounters between the police officer, acting in a law enforcement capacity, and the citizen invoke core constitutional, statutory and common-law guarantees against unreasonable searches and seizures, of individual liberty and privacy, and "the right to be let alone” (Olmstead v United States, 277 US 438, 478; see, US Const 4th Amend; NY Const, art I, § 12; CPL 140.50; People v De Bour, 40 NY2d 210; People v Hollman, 79 NY2d 181). In assessing such encounters, the crucial inquiry is as to the reasonableness of the police action in all the circumstances analyzed under the four-tiered methodology set forth in People v De Bour (supra) and reaffirmed in People v Hollman (supra).
The first level, the right to request information, encompasses basic, nonthreatening questions concerning identification, address, destination and reason for being in a particular area. This encounter, characterized by its brevity and the absence of harassment or intimidation, may be exercised when the police officer has an objective, credible reason for initiating it. (People v Hollman, supra, 79 NY2d, at 191.)
The second level, the common-law right of inquiry, encom *950 passes more pointed questions that would lead a person reasonably to believe that he is suspected of some wrongdoing and is the focus of the investigation. An officer may exercise this right when he has a founded suspicion that criminality is afoot. (79 NY2d, supra, at 191-192.)
The third level permits an officer to forcibly stop and detain a person for questioning when he has a reasonable suspicion that the person has committed a crime. When the officer has grounds to fear for his safety, he may conduct a frisk of the suspect. (79 NY2d, supra, at 185.)
The fourth level, arrest, is based upon probable cause to believe that a person has committed a crime. (Supra.)
In the instant case, the officer observed the defendant purchase a gun holster, walk out of the store, look side to side and then walk down the street. The officer immediately approached the defendant, asked him pointed questions about a weapon, frisked him and then searched his briefcase. No preliminary inquiry as to identity, address or destination was made.
Clearly, this was a common-law inquiry which must be justified by a founded suspicion that criminal activity is afoot. "Where the person approached * * * might reasonably believe that he * * * is suspected of some wrongdoing * * * [t]he encounter has become a common-law inquiry.” (People v Hollinan, supra, at 191.) On this record, lacking a founded suspicion of criminality, the intrusion was improper.
The facts in People v Johnson (79 AD2d 936, affd 54 NY2d 958) are strikingly similar to the facts in this case. In Johnson, the officer observed the defendant purchase a holster in a shop on 42nd Street. When the defendant came out of the door, the officer approached him and asked if he had a gun. After the defendant denied having a gun, the officer ordered the defendant to open his jacket. The defendant then opened his jacket and opened his vest. The officer observed a gun in the defendant’s vest pocket.
The Appellate Division, in affirming the suppression order, stated: "The mere purchase of a holster from a 42nd Street novelty shop without the presence of additional objective criteria indicating that 'criminal activity is afoot’ * * * does not permit further intrusion upon the purchaser, other than mere inquiry by the police” (79 AD2d, supra, at 936).
The Court went on to hold that the nervousness exhibited by the defendant did not qualify as other evidence of criminal *951 ity which would have justified going beyond a request for information nor was there sufficient evidence to conclude that the officer feared for his safety so as to warrant a greater intrusion.
Thus, mere purchase or possession of a holster, without more, will not justify other than an inquiry and request for information. Neither sale nor possession of such an item is proscribed per se. While the obvious use of a holster is to contain and carry a handgun, the item itself is not contraband. Nor is mere sale or possession otherwise regulated or controlled under existing law, whatever the merits of that may be in a reasonable regimen of handgun control. To be sure, diligence in enforcing the law against the unlawful carrying of weapons in public and protection of the public safety warrant preliminary inquiry and investigation in circumstances such as those disclosed in this record. But, without more, that is the limit of intrusion in striking the balance between individual liberty and privacy, and the State’s interest in enforcing handgun possession laws and promoting the public safety. Were it otherwise would be to condone the police officer stationing himself or herself outside the shop door and inquiring at will.
Thus it is that in those cases that have upheld police conduct in similar circumstances, there has been some additional factor or factors suggestive of criminality. In People v Samuels (50 NY2d 1035) the defendant, in addition to purchasing a holster and refusing to respond to the officer’s inquiry, placed his hand in a menacing manner in his coat pocket and refused to remove it. In People v Clarke (60 NY2d 568) one of the officers observed a bulge in the breast pocket of the defendant’s tight fitting jacket. This bulge was the size of a small gun which would have fit the holster which the defendant had just purchased. (See also, People v Coull, 176 AD2d 467 [defendant examined holster, had bulge in pocket and reached into pocket]; People v Rivera, 121 AD2d 939 [defendant wearing holster containing object which caused bulge].)
In the case before the court, there existed no such additional factor or factors which would have provided the officer with a founded suspicion of criminality and justified his intrusive questions and actions. While the officer’s observations of the defendant provided him with an objective, credible reason to approach and ask basic questions, there was no observation of a telltale bulge; no furtive or evasive motion by the defendant who was cooperative and polite; nor any articu *952 lated fear for the officer’s safety. Thus, the officer unjustifiably crossed the threshold of permissible conduct by almost immediately asking pointed questions suggestive of criminality and by searching the defendant and his briefcase.
Even were the court to credit the officer’s testimony that the defendant consented to the searches, the officer’s actions still could not be sustained. Since any such request to search, if it happened, would have been improper on this record, any resulting "consent” would have been the product of the improper police inquiry and therefore invalid (see, People v Irizarry, 79 NY2d 890, 892).
For the foregoing reasons, the defendant’s motion to suppress physical evidence is hereby granted.
The defendant’s motion to suppress statements is also granted because those statements flowed directly from the defendant’s illegal arrest (see, People v Galante, 130 AD2d 588).