■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL GRAY, Appellant.—Judgment, Supreme Court, New York County (Rose Rubin, J.), rendered May 23, 1988, convicting defendant, upon a plea of guilty, of criminal possession of a weapon in the third degree (Penal Law § 265.02), and sentencing him to five years' probation, unanimously reversed, on the law, defendant's motion to suppress physical evidence and statements is granted, and the indictment dismissed.

The relevant facts are as follows:

At approximately 1:30 A.M. on August 14, 1986, Police Officers Joseph Bonomo and Leonard Everline responded to a radio run report of "two male Hispanics with guns, red shirts and safari suit" on 105th Street and First Avenue in Manhattan. The source of this information was an anonymous tip to police emergency telephone number 911.

Upon arriving at the location, the officers observed groups of people standing on each of the four corners of the intersection. These groups, which included black and Hispanic males, totaled approximately 30 to 40 persons. Among those on the northwest corner was defendant, a black male wearing a red jacket and "camouflage" pants.

Bringing their marked radio motor patrol car to a halt 5 to 10 feet from where defendant stood, the officers exited the vehicle with guns drawn and pointed downward, and Officer Bonomo approached defendant, stating that he wished to speak to him. Defendant, whose hands were in his pockets, responded that he had done nothing wrong and did not want to speak with the officer. He then turned to walk away, only to encounter Officer Everline, who was approaching him from the other direction. Everline ordered defendant not to move and to put his hands up on the wall of a building. When defendant again tried to walk away, Everline grabbed and

placed him spread-eagled on the hood of the police car. Defendant was then patted down, and a loaded .25 caliber automatic pistol was seized from the lower of two pockets on his right pants leg.

Defendant was placed under arrest and *Miranda* rights administered. He agreed to speak to the police officers, and stated that he had obtained the gun from his brother in North Carolina because he had been robbed and did not want to be robbed again.

Following a hearing, defendant's motion to suppress the gun and statements was denied, and on March 28, 1988, he entered a plea of guilty to criminal possession of a weapon in the third degree, and was sentenced to five years' probation.

It is well established that an anonymous tip which provides a general description and specifies a location of a "man with a gun" does not, without more, constitute a reasonable suspicion to stop and frisk anyone who may happen to meet the description. *(People v De Bour,* 40 NY2d 210, 224-225; *People v Stewart,* 41 NY2d 65, 69.)* Such tips "are of the weakest sort since no one can be held accountable if the information is in fact false * * * and there is no way to assure * * * that the information was communicated and received accurately and was believable" *(People v De Bour, supra,* at 224). For this reason, information anonymously conveyed will generally warrant no more than the exercise of common-law right of inquiry.

It is only when the anonymous information is "so specific and congruous" with that which is actually encountered by the responding officers that the reliability of the tip may reasonably be assumed, justifying more intrusive police action. *(People v Benjamin,* 51 NY2d 267, 270; *People v Bond,* 116 AD2d 28, 31.)* The police are also entitled to take reasonable measures in response to "factors rapidly developing or observed at the scene." *(Supra,* at 270.)

In the case at bar, the information anonymously relayed to the police was not sufficiently specific, or the description so unique, as to render it inherently trustworthy or reliable. The officers were directed to an intersection in East Harlem where, by their own estimate, a total of 30 to 40 people were present. The information possessed by the officers concerned two Hispanic males with guns. The caller further indicated clothing worn as being a red shirt and a safari suit, without specifying whether this description applied to one or both of the men, or whether the red shirt applied to one and the safari suit to the other.

Upon arriving at the given intersection, the officers observed defendant, a black male, who was standing with a group of other blacks. Despite the fact that significant factors in the report, i.e., the number of individuals involved and their race, did not match, and that the defendant's red jacket and camouflage pants did not provide an exact match to the description of dress provided, the police emerged from their vehicle with guns drawn, and forcibly detained and frisked defendant. Significantly, the radio run did not convey any report of past, present, or potential violence, and no exigent circumstances were observed by the police upon their arrival.

Further, the officers observed neither a bulge in defendant's clothing that might have indicated the presence of a weapon *(see, People v De Bour, supra,* at 221) nor a threatening gesture which could reasonably have placed them in fear of danger. *(See, People v Benjamin, supra,* at 271; *People v Bond, supra,* at 32.) In this context, we note that defendant's having had his hands in his pockets as he stood engaged in conversation with other persons on the street could not, without more, reasonably be interpreted as threatening, furtive, or suspicious. *(See, People v De Bour, supra,* at 222.)

Finally, defendant's attempt to walk away from the officers, as well as his refusal to speak with them, was insufficient to escalate the common-law right of inquiry to that of a reasonable suspicion, thereby justifying a stop and frisk. *(People v Howard,* 50 NY2d 583, 590-592, *cert denied* 449 US 1023; CPL 140.50.)

For all of these reasons, we conclude that the predicate for the police action did not warrant the "extent of the official intrusion on the individual" and that defendant's motion to suppress the weapon and the statements should, accordingly, have been granted. *(People v Stewart, supra; Dunaway v New York,* 442 US 200.) Concur—Murphy, P. J., Kupferman, Kassal, Wallach and Smith, JJ.