■ In the Matter of WESLEY M., a Person Alleged to be a Juvenile Delinquent, Respondent. [600 NYS2d 67] —Order, Family Court, Bronx County (Rhoda J. Cohen, J.), entered on or about February 27, 1992, which, after a hearing, granted the respondent's motion to suppress physical evidence and dismissed the juvenile delinquency petition, affirmed, without costs.

At a hearing conducted in response to the respondent's motion to suppress physical evidence, Police Officer Christopher Perino testified that he received a radio report of a man with a gun at the corner of Brandt and University Avenues at 9:45 P.M. on November 2, 1991. The report described the suspect as a male black, approximately 14 years of age, wearing a black hat, brown jacket, dark blue jeans and brown boots. On cross-examination, however, a computer print-out of the report was introduced and indicated that the suspect was actually described as wearing a blue hat and beige sweatshirt. He was also seen sitting on a Cadillac in front of a grocery store.

When the officer and his partner arrived at the described location, they saw the respondent among a group of five or six teenagers walking down the street. The officers then drove to the corner of 174th Street and University and veered the car around to cut off the path of the group of teenagers. Using the car as cover, the officers approached the respondent with their revolvers drawn, but pointed at the ground. The respondent saw the guns and stopped. According to Perino's testimony at the hearing, the respondent then put his hands up and said "I am carrying an air gun." However, this testimony was the first time Perino "memorialized" the respondent's statement. He conceded that he never mentioned the respondent's assertion of possessing an air gun in the deposition he filed in support of the petition, in a complaint report or in a Probation Intake Referral report he had filed.

Perino added that he saw a bulge in the respondent's waistband and removed an air pistol. However, he changed his

testimony three times in describing the exact time when he first saw the bulge. At one point, he stated that he first noticed the bulge when the respondent put his hands up in response to the officers' approach. He later stated that he saw it when the officers first positioned their patrol car at the corner of West 174th Street. Finally, he testified that he first observed the bulge in the respondent's waistband when he exited the car with his gun drawn. Perino also conceded that the respondent's clothing was bulky and that he could not detect the presence of a weapon from the bulge. After removing the air pistol, a thorough search of the respondent was conducted and 54 decks of heroin were removed from his pants pocket.

The Family Court rejected the officer's testimony as to the time when he first saw the bulge in the respondent's waistband as unreliable. The court further found that while the officers had the right to inquire, their approach with guns drawn constituted an impermissible detention. Accordingly, the respondent's motion to suppress was granted and the petition was dismissed.

We agree with the Family Court that the circumstances presented did not warrant the actions taken by the officers. The officers, upon arriving at the location described in the radio report, observed the respondent nearby, walking with a group of teenagers. He was not sitting on a Cadillac nor was he engaged in any furtive or suspicious behavior. The Family Court rejected the conflicting testimony of the officer as to the time when he first observed a bulge in the respondent's waistband, and since such determination is to be accorded much weight *(People v Prochilo,* 41 NY2d 759, 761), we find that the officer did not see the bulge through which he conceded he did not see the configuration of a weapon, at the time he approached the respondent.

Because the respondent's clothing was similar to that described generally in the radio report, the officer did have a common law right to inquire *(see, People v Gray,* 154 AD2d 301; *see also, People v Maya,* 172 AD2d 565, *lv denied* 78 NY2d 1013; *People v Patterson,* 156 AD2d 723; *People v Perez,* 125 AD2d 419). This right "is activated by a founded suspicion that criminal activity is afoot and permits * * * a policeman * * * to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" *(People v De Bour,* 40 NY2d 210, 223; *see also, People v Hollman,* 79 NY2d 181). Although the dissenter agrees that the circumstances presented only provided the officers with

the right to inquire, he maintains that the officers' approach with weapons drawn did not constitute a seizure of the respondent, but was merely a minimal step taken to protect themselves while they investigated further. We disagree.

*De Bour* specifically excludes a forcible seizure from the actions permissible to conduct an inquiry. Here, no inquiry was even attempted. Instead, the officers blocked the respondent's path with their patrol car and approached with guns drawn. The measures taken were more than a "simple" precaution as the dissenter maintains and constituted a forcible seizure *(see, People v Diaz,* 81 NY2d 106; *People v Hicks,* 68 NY2d 234; *People v Cantor,* 36 NY2d 106; *People v Wilson,* 175 AD2d 15, *lv denied* 78 NY2d 1015; *People v Machuca,* 156 AD2d 993). Since such seizure was unlawful, the evidence obtained as a result thereof was properly suppressed *(see, People v Cantor, supra).* Concur—Rosenberger, J. P., Ellerin and Rubin, JJ.

Asch, J., dissents in a memorandum as follows: Officer Perino who was on radio motor patrol with his partner, on a Saturday November night at 9:45 P.M., received a radio report of "a man with a gun". The report described the individual as a male black, wearing a black (or blue) hat, brown (or beige) jacket or shirt, dark blue jeans and brown boots, approximately fourteen years of age, at the corner of Brandt Avenue and University Avenue. When the officers proceeded to that location, they saw an individual fitting that description walking from the corner of Brandt and University Avenues south toward 174th Street, in the company of five or six teenagers. The officers, who were in uniform, stopped the patrol car at the corner, and got out. As Officer Perino testified:

"We moved to the side of the car. We used the car as cover and a parked car as cover, and we approached Mr. [M], who fit the description from the radio run.

"At that time as we exited the car looking for cover, approaching him, do *[sic]* to the tactical reasons, the danger, we had our revolvers drawn * * * They were not pointed at the defendant *[sic]*, they were pointed towards the ground. At this time Mr. [M] saw us coming out of the car with our revolvers. He stopped, put his hands up in a manner that was up towards the shoulders a little bit, took one step back * * *

"At that time defendant *[sic]* then stated to myself and my partner that—he said, 'I am carrying an air-gun,' which also at that time we saw a bulge from the defendant's *[sic]* waistband * * *

"Then from that time on I went directly to the bulge, produced an air pistol. At this time, feeling secure about the limit of danger being lowered we then asked the defendant [sic] to come over to the police car which was parked 7 to 8 feet away, and from there we did a thorough search of the defendant [sic]."

The officer also testified that when he first recovered the air-gun, he believed it to be a firearm.

When the officers received the radio report of a "man with a gun" at a specific location with a detailed description and then saw respondent about a block away, coming from that location and substantially fitting the description, they had a "founded suspicion" that criminal activity was afoot. "The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure." *(People v De Bour,* 40 NY2d 210, 223.) The fact that the officers drew their weapons upon their approach was *not* a seizure of the respondent, as found by the Family Court, but simply a necessary and minimal step to protect themselves while they investigated. If the police had a duty to inquire further after receiving the radio call and description which fit respondent, they most certainly had a concomitant right to safeguard their lives, by a simple and minimal precaution *(see, People v Chestnut,* 51 NY2d 14, 21, *cert denied* 449 US 1018; *People v Benjamin,* 51 NY2d 267, 271).

Immediately thereafter, when the respondent threw up his hands and said "I am carrying an air-gun", the inquiry was, at the least, escalated to the level of a detentive stop and frisk, especially since the officer testified that he saw a "bulge" in respondent's waistband. "Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (CPL 140.50, subd 1; see *Terry v Ohio,* 392 US 1; *People v Cantor, supra).* A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed (CPL 140.50, subd 3)." *(People v De Bour, supra,* at 223.) When this frisk produced the gun, which appeared to be a "real firearm", the police had probable cause to arrest respondent and the search which thereafter revealed the heroin was lawfully

conducted incident to the arrest. In fact, when the respondent announced to the officers that he had an air-gun, even if the officers did not observe a bulge, they still had the right to frisk him. Further, even if the officers did not believe the weapon to be a "real firearm", since respondent was under sixteen years of age, they had probable cause at that time to arrest him. Pursuant to Penal Law § 265.05 it is unlawful for anyone under the age of sixteen to possess an air-gun. Thus, under any scenario, the frisk was lawful, as was the subsequent arrest and incidental search of respondent. To summarize, the only possible discrepancies between the Sprint report and the officer's account of what he heard and what the youngster was wearing were a blue hat instead of a black hat, and a beige shirt instead of a brown one. The rest of the description including respondent's approximate age fit the respondent exactly. Furthermore, the police action in responding to the radio run describing someone with a gun was measured and reasonable. When the respondent saw them, he put his hands up and said he had a gun. Thus, the officers had probable cause to arrest him at that time and the subsequent search of the respondent which revealed the 54 decks of heroin besides an air-gun was, therefore, legal as one incident to arrest.

Accordingly, I would reverse the order of the Family Court, Bronx County, on the law, deny respondent's motion to suppress the contraband and reinstate the petition.