(February 22, 1996)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID PEREZ, Appellant. [638 NYS2d 441] —Judgment, Supreme Court, New York County (Richard D. Carruthers, J.), rendered December 1, 1993, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentencing him to five years probation, affirmed.

Police officers patrolling in an unmarked police vehicle disguised as a taxicab received a radio call reporting that two male Hispanics were breaking into a Toyota vehicle at Forsythe and Division Streets across the street from a parking garage. One of the individuals was described as wearing a brown ski cap, dark jacket, blue jeans and white sneakers. The other individual was described as wearing a black jacket, blue jeans, and black sneakers. Upon arriving in the vicinity of the specified location within about one minute after receiving the radio call, the officers saw defendant, a male Hispanic, wearing a brown ski cap, blue denim jacket, light colored pants and white sneakers. Defendant was walking with another male Hispanic, who was wearing a black jacket, blue jeans, and black sneakers. There were no other individuals in the area who fit the description.

The arresting officer approached the two individuals with his weapon drawn but pointed to the ground and was followed by two other officers. The testimony was inconclusive as to whether these officers had their weapons drawn or not. The arresting officer conducted a brief inquiry and then twice asked the defendant to remove his hands from his jacket pockets. When the defendant failed to comply with the officer's two requests, defendant was placed against a car and frisked. A loaded gun was recovered from one of the defendant's pockets.

"A police officer is entitled, and in fact is duty bound, to take action on a radio call" (*People v Benjamin*, 51 NY2d 267, 270). Where the defendant raises a challenge to the permissible extent of the police action in response to the radio call, the People can demonstrate that, in view of all the circumstances, the police action was justified by showing that the information conveyed was so specific and congruous with that which was actually encountered that its reliability could have been assumed (*supra*). In this case, the defendant and his companion were observed in close proximity to the location given in the radio call and were the only individuals present who closely matched the descriptions received by the officers; therefore, the reliability of the report was properly assumed (*compare, People v Tucker*, 207 AD2d 748, *lv denied* 84 NY2d 940, *and*

*Matter of Dalmin M.*, 201 AD2d 343, *appeal dismissed* 83 NY2d 883). The arresting officer was therefore justified in taking the precaution of keeping his weapon at the ready but pointed toward the ground (*People v Tucker, supra*). Rather than immediately grab hold of the defendant, place him against the car and frisk him, the arresting officer began with a mere inquiry and frisked the defendant only after he failed to remove his hands from his pockets after repeated requests. In view of the totality of circumstances, the defendant's refusal in this case was sufficient to warrant the protective frisk.

*People v Gray* (154 AD2d 301) is distinguishable from this case. Here, the information in the radio call was specific and congruous with what was actually observed. In *Gray*, the officers received a report of " 'two male Hispanics with guns, red shirts and safari suit' " (*supra*, at 301). The responding officers then encountered groups of individuals standing on each of four corners totaling approximately 30 to 40 persons, which included African American and Hispanic males. The defendant in *Gray* was an African American male who was wearing a red jacket and camouflage pants.

Given the speed with which events develop when police officers respond to a reported crime, it can only be concluded that the actions of the arresting officer herein were prudent and justified. Concur—Kupferman, Ross and Williams, JJ.

Murphy, P. J., and Wallach, J., dissent in a memorandum by Wallach, J., as follows: There are several levels upon which police may approach an individual on the street. The most innocent is simply a request for information—a general, nonthreatening encounter, during which the police may ask, for articulable reason, such basic questions as identity, address, destination or reason for being in the area. Once the policeman's questions become extended or accusatory, focusing on the individual's possible criminality, the encounter has escalated to a common-law inquiry, which requires a founded suspicion that criminality is afoot (*People v Hollman*, 79 NY2d 181). What develops during a request for information—e.g., unsatisfactory answers, notice of a pocket bulge, attempt to flee, etc.—may itself escalate the situation to a common-law inquiry. Notwithstanding the absence of any such factors, the responding officer escalated this encounter to still a third level—a significant interruption of defendant's liberty of movement, in the form of a forcible stop and seizure (*see, People v De Bour*, 40 NY2d 210).

Even the initiation of this encounter was at an intrusive level far beyond a common-law inquiry. The anonymous tip

(itself the least reliable form of information on which to base police action [*People v De Bour, supra*, at 224]) had not alleged that the perpetrators were armed (*cf., People v Chestnut*, 51 NY2d 14, *cert denied* 449 US 1018), nor did the initial encounter give any indication that defendant was carrying a gun (*cf., People v Benjamin*, 51 NY2d 267), and yet, the officer approached defendant with his gun drawn, immediately lending "considerably more intens[ity]" to the confrontation (*People v Finlayson*, 76 AD2d 670, 678, *cert denied* 450 US 931). Notwithstanding the officer's testimony that he feared for his safety and that of his police companions, the hearing record bespeaks of no articulable reason for him to believe that defendant was armed, nor was there ever sufficiently reasonable suspicion of involvement in criminal activity to warrant a preventive search for weapons (*cf.*, CPL 140.50 [1], [3]).

We do not mean to minimize our appreciation for the constant risk to policemen responding to reports of a crime, and their need to make split-second decisions in appraising a given situation. But the totality of the circumstances in this record simply did not justify the approach with guns drawn, the order to remove hands from pockets, and the subsequent frisk (*see, People v Gray*, 154 AD2d 301; *cf., People v Oppedisano*, 176 AD2d 667, *lv denied* 79 NY2d 1052). The fruit of this unwarranted search should have been suppressed.