■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEAN BROOKS, Appellant.

The facts are basically as set forth in the dissent. We note, however, that the vinyl or leather bag in issue was "right alongside" of defendant when Officer Brenneisen picked it up. The officer testified that as he picked up the bag by its handles, "it just opened," and at this point he saw the gun.

The radio transmission the officers received concerned a "man with a gun" and the description given over the radio was "a short male black with a plaid jacket, waving a pistol in front of 165th Street, West 165th Street and Anderson Avenue." The conclusion drawn by the dissent is that, although this provided a sufficient predicate upon which to make an initial noncustodial inquiry, it did not justify further intrusive police action. This is supported neither by the facts nor the controlling case law.

Thus, in *People v Benjamin* (51 NY2d 267), a radio run advised the officers that there were men with guns at a specified street location. When the officers arrived at the scene, there were about 30 people gathered on the street, one of whom was the defendant Benjamin. As the officers approached him, he stepped backwards and reached beneath his jacket with both hands to the rear of his waistband. One of the officers conducted a limited patdown search, which produced a loaded weapon. The Court of Appeals, although noting that "an anonymous tip of 'men with guns', standing alone, does not justify intrusive police action, and certainly does not rise to the level of reasonable suspicion warranting a stop and frisk" added that the People can show that the action was justified "by sufficient explanation of the source of the call and proof of its reliability [citation omitted]

*or alternatively by showing that the information conveyed was so specific and congruous with that which was actually encountered that its reliability reasonably could have been assumed"* (*People v Benjamin, supra,* at p 270; emphasis added).

In the instant case, the police arrived at the scene to confront only one individual. He also fit the description given exactly, a short black man with a plaid jacket. Thus, the reliability of the call that he had been waving a pistol at that location could reasonably have been assumed by the police.

Also, in *Benjamin* (*supra*), the Court of Appeals found that additional support for the radioed tip was furnished by the actions of the defendant in reaching to the rear of his waistband and, therefore, the action of the police in patting down the defendant was a limited intrusion justified by an ample measure of reasonable suspicion.

A fortiori, in the instant case, the officers found the defendant at the scene, with no one else present in the immediate area, who exactly fit the detailed description given (*cf. People v La Pene,* 40 NY2d 210, 225, tip of "[b]lack man with a red shirt" with possibility other black men with red shirts were present). In addition, the defendant, after he saw the police and after they had identified themselves, turned and walked away "at a fast pace" with his hands "toward his waistband."

Consequently, the totality of the circumstances, including the detailed radio call and the information acquired by observation at the scene, gave rise to a reasonable suspicion justifying the limited intrusive police behavior herein (*People v Benjamin, supra*).

Since we determine that the police action, in stopping and frisking defendant, was justified by the totality of circumstances, we must decide whether the officers were also warranted in looking in the bag. The testimony adduced at the suppression hearing and trial shows that *while* one officer was attempting to put defendant "on top" of a car for the frisk (i.e., against the car), as the court expressly found, the other officer simultaneously "picked up a brown folder type case * * * grasped it by its two handles, one on each hand, and while it was being lifted, it opened * * * disclosing its contents", the defendant's gun. *After this,* the handcuffs were first put on the defendant. The Supreme Court concluded that the bag was "inadvertently opened" by the police officer. There is nothing in the record to support the statement in the dissent that "the officer picked up the case by its two handles, *pulling them apart"* (emphasis added).

The testimony also showed defendant was frisked, as noted, "on top" of the automobile, and that the bag was alongside the same auto and "right alongside" of defendant. Thus, the contents of the bag were readily accessible to defendant, and the frisk or "patdown" of defendant's person and the minimal action with respect to the bag were for all practical purposes conducted at the same time and place.

The bag was "right alongside" of him, with no zipper or snap to impede his "grabbing" the gun inside. The action of one officer in picking the bag up as defendant was being frisked by the other was a minimal intrusion and was as fully justified by the totality of the circumstances as was the frisk. "It would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety" (*People v Benjamin, supra,* at p 271). Concur — Sullivan, J.P., Asch and Kassal, JJ.

Milonas, J., dissents in a memorandum as follows: In my opinion the judgment herein should be reversed and the motion to suppress granted.

On April 15, 1982, at approximately 9:15 P.M., uniformed Police Officers William Johnson and James Brenneisen were on motor patrol when they received a radio report that a short black male wearing a plaid jacket was waving a pistol in front of West 165th Street and Anderson Avenue in The Bronx, a high crime area. The officers proceeded to that location and observed the defendant, a short black man with a plaid jacket, sitting on a parked automobile. There was no one else present in the immediate area. The officers exited their vehicle with their guns drawn and approached the defendant, who began to walk away at a brisk pace. Officer Johnson holstered his gun and ran after the defendant, catching up with him before he had gone very far. The officer grabbed the defendant, returned him to the parked car, put the defendant's hands on the car and performed a frisk of his person. During this time a backup unit with two other police officers arrived at the scene.

In the meantime, Officer Brenneisen had noticed a soft, thin brown leather or vinyl carrying case resting next to where the defendant had been standing and where he was then being frisked. Without inquiring as to the ownership of the bag or its contents, the officer picked up the case by its two handles, pulling them apart. This caused the bag to open, thereby revealing the existence of a gun lodged inside among various work papers. Officer Brenneisen informed his partner of the discovery, and the latter placed the defendant under arrest. The defendant exclaimed that the bag belonged to him and that he

had found the gun. In response to this declaration, Officer Johnson advised the defendant to refrain from making any further statements until he had been given his rights.

The radio transmission concerning a short black male wearing a plaid jacket clearly provided a sufficient predicate upon which to make an initial noncustodial inquiry. (*People v Landy,* 59 NY2d 369; *People v Harrison,* 57 NY2d 470; *People v Benjamin,* 51 NY2d 267; *People v De Bour,* 40 NY2d 210.) Regardless of whether or not the officers also possessed the requisite reasonable suspicion to believe that the defendant had committed or was about to commit a crime such as would support a frisk for weapons, they lacked any probable cause whatever to search his bag. The officers certainly made no claim of having seen or felt a bulge in the bag prior to its being opened, nor did they have any information that it contained a weapon. Although the majority contend that the bag was readily accessible to the defendant, the People make no such assertion. At the time that the search of the bag took place, there were four police officers on the scene, the defendant was being detained "on the car", and he was certainly not in any position to reach for the carrying case. In fact, this would have been impossible since Officer Brenneisen had already picked up the carrying case prior to, or contemporaneously with, the defendant's frisk, and there was not the slightest necessity to search the bag for the protection of the officers. (*See, People v Smith,* 59 NY2d 454.)

As for the prosecution's argument that the defendant had abandoned his property, this allegation is not only inconsistent with common sense but with the District Attorney's own statement to the jury that it "would be absolutely ridiculous" to say that a bag would not still be yours if "you were walking down the street * * * and you put the bag down a moment to tie your shoes" or "you are sitting on a car" and you have a bag on the ground. A person does not abandon a briefcase filled with work papers simply by moving away from it momentarily. (*See, People v Caldwell,* 53 NY2d 933.) As the Court of Appeals held in *People v Howard* (50 NY2d 583, 593): "Whether there was an abandonment is partly a matter of property law but essentially a question of constitutional law. There is a presumption against the waiver of constitutional rights. It is the People's burden to overcome that presumption by evidence of ' "an intentional relinquishment or abandonment of a known right or privilege" ' (*Brookhart v Janis,* 384 US 1, 4; *Johnson v Zerbst,* 304 US 458, 464; *People v Whitehurst,* 25 NY2d 389, 391). The proof supporting abandonment should 'reasonably beget the exclusive inference of the throwing away' (*Foulke v New York Cons. R. R. Co.,*

228 NY 269, 273, quoted with approval in *United States v Cowan,* 396 F2d 83, 87).”

In that regard, the defendant's walking about six feet away from the parked car against which he had been sitting in response to the officers' approach with drawn guns can hardly be considered to “ 'reasonably beget the exclusive inference of the throwing away' ” referred to by the Court of Appeals. To the contrary, he still claimed ownership of the bag after the gun had been discovered in it.

The People also suggest that the weapon was found in plain view, and the majority adopt the position that the bag, having no zipper or snap, simply “opened” to reveal defendant's gun. However, this theory is contradicted by Officer Brenneisen's testimony that he placed one hand on each handle and pulled apart the handles of the bag. There is no indication whatever that the gun was visible until the officer, after having picked up the carrying case, opened it and looked inside.