OPINION OF THE COURT
John M. Leventhal, J.
The defendant stands accused of criminal possession of a weapon in the third and fourth degrees. A Mapp hearing was *401 ordered to consider whether the weapon should be suppressed. At the hearing Police Officer (P.O.) Angelo Rodriguez of the 84th Precinct was the sole witness.
FINDINGS OF FACT
The court finds Officer Rodriguez to be credible. On August 7, 1998, P.O. Rodriguez was working a 1:00 p.m. to 9:00 p.m. tour. At 3:17 p.m., while on his motor scooter at Navy Street near the Farragut Houses, P.O. Rodriguez received a radio run describing a black, heavyset male carrying a gun contained in a black bag. The description further identified the black man as wearing a black hat, black pants, and blue jersey/sweatshirt with “FUBO” printed on it. The perpetrator was stated to be at Washington and Red Cross Place. P.O. Rodriguez proceeded on his scooter toward Cadman Plaza East and the train station. He observed three persons in the area, one of whom, the defendant herein, fitted the description given over the police radio.
The officer called for backup. During the few minutes wait for the supporting officers to arrive, P.O. Rodriguez kept the defendant under surveillance from no more than 35 feet. Upon the arrival of the other officers, P.O. Rodriguez approached the three men with his gun drawn and ordered the defendant to put his hands up. The defendant complied. P.O. Rodriguez removed the black bag from the defendant’s shoulder. The officer testified that “[T]he bag had weight to it.” Citing safety reasons, P.O. Rodriguez immediately opened the soft canvas or duffel-type bag which was closed with either velcro or a zipper, and looked into the bag. A .357 magnum revolver with a two-to-three-inch barrel was observed in the bag. The officer handed the bag to another officer and the defendant was placed under arrest. The bag had been returned to the defendant along with the other contents of the bag at some time after his release on bail on these charges.
P.O. Rodriguez did not know the defendant’s name or home address. He did, however, know that the defendant did work at a certain construction site in the downtown area.
CONCLUSIONS OF LAW
The anonymous tip that a black, heavyset man wearing a black hat, black pants and blue jersey/sweatshirt with “FUBO” printed on it, carried a gun in a black bag at Waverley Street and Red Cross Place is very specific and particular. P.O. Rodriguez was under a duty to investigate such a report. (People v Landy, 59 NY2d 369, 374; People v Benjamin, 51 NY2d 267, *402 270.) P.O. Rodriguez, upon arriving at the named location, observed the defendant fitting the description given. The information provided was specific and consistent with the observations of the officer. (People v Kinlock, 43 NY2d 832.) Thus P.O. Rodriguez had reasonable suspicion to stop and frisk the defendant. (People v Salaman, 71 NY2d 869.) A “frisk” of the bag carried on the shoulder of the defendant would also have been proper under these circumstances (People v Brooks, 65 NY2d 1021; People v Cartagena, 189 AD2d 67; People v White, 156 AD2d 741; People v Tratch, 104 AD2d 503).
The narrow issue to be determined is whether P.O. Rodriguez’s actions constituted a permissible frisk or pat down of the bag.
The area of street encounters in the area of “search and seizure” is a troubling one for the courts especially where guns are involved. This “minefield” must be navigated carefully and with much thought in determining whether an act constitutes proper police conduct or an unlawful search and seizure. (People v Cartagena, 189 AD2d, at 69, supra.) This court notes that a hearing was conducted for approximately one hour and two evenings of legal research were spent in deciding this issue. Yet a police officer is expected to make an instantaneous decision as to what constitutes proper conduct in a situation that may be subtly different from the officer’s past experience and where one’s safety may be potentially in peril. An examination of the pertinent case law is instructive.
In People v Brooks (65 NY2d 1021, supra), the police received a radio run that a short black man wearing a plaid jacket was waving a pistol in front of a specified intersection in a high-crime area. The police officers proceeded to the location and observed the defendant who matched the description provided. The police exited their vehicle with guns drawn and approached the defendant who began to walk away at a brisk pace. The police officers caught up with the defendant before he had gone very far, returned him to the police vehicle, and conducted a frisk of the defendant. Another officer noticed a folder-type carrying case next to the defendant. The officer picked up the bag by its handles when it just “ ‘opened’ ”, displaying its contents, the gun (110 AD2d 571, 572). The Court of Appeals held that “the parameters of a permissible frisk were not exceeded” as^a full-blown search had not been conducted. (65 NY2d, supra, at 1023.)
In People v Moore (32 NY2d 67), a man was arrested after being accused of menacing his girlfriend with a knife. On his *403 way to the precinct, the man told the police officer that his girlfriend, the defendant, “was ‘sick’ [and] * * * had a gun” (supra, at 68). At the station house, the police officers asked the defendant for her handbag. When the defendant gave her handbag to the police officers, a search produced an unlicenced gun. The Court of Appeals upheld the “search” under the stop and frisk law (CPL 140.50). The Court pointed to the fact that the informant was known to the police and had little motive for fabrication as he was also at the station house. An immediate search was held to be justified as the information was reliable, and the belief of danger to the officer and others was real and reasonable. The Court noted that a pat down of the handbag would have been ineffective. It should be noted that what was portrayed as a search was the opening and looking into the handbag.
In People v White (156 AD2d 741, supra), police officers received a radio report describing the perpetrators of an armed robbery. As they proceeded to the crime scene, the arresting officers observed the defendant and his companions, who matched the description provided and detained them for purposes of making an inquiry. The officers frisked the bag held by the defendant since it made a metallic sound when it was dropped by him. When the officer touched the outside of the bag he felt what he believed to be a gun. The bag was then opened. The Appellate Division (at 742, citing People v Brooks, supra) held the frisk of the bag to be proper.
In People v Tratch (104 AD2d, supra, at 504), the Appellate Division held that a stop and frisk of a person by a police officer to protect himself was proper as being based on reasonable suspicion and the precautionary measure of “frisking” the shopping bag carried by the defendant was also warranted as it could have contained a gun. The majority held that the lifting of a shopping bag having weight, the looking into the bag and the removal and opening of a vinyl carrying case “ ‘designed to carry a revolver’ ” was reasonable (supra, at 503). The dissent disagreed only by characterizing the officer’s actions of “opening and exploration of a closed container,” the shopping bag as well as the vinyl bag contained therein, as a full-blown search designed to uncover evidence and requiring probable cause (supra, at 506 [Boyer, J., dissenting]).
In People v Pugach (15 NY2d 65), a pr e-Mapp case (Mapp v Ohio, 367 US 643), the police officers frisked the defendant in a patrol car. The defendant placed a briefcase on top of his lap. A police officer took the briefcase, opened it, and found a gun. *404 The Court of Appeals in denying suppression held that the finding of the gun resulted from a permissible frisk and not from an unreasonable search.
In People v Coleman (215 AD2d 576), the Appellate Division held that the police officer possessed reasonable suspicion that the defendant was armed. The officer’s pat down or frisk of defendant’s knapsack was proper. The officer felt “heavy hard objects” inside the bag and thought it was a gun. (Appellant’s brief, at 3, 7.) The subsequent search of the bag, based on what the officer felt, was proper and lawful.
The People have the initial burden of going forward with sufficient credible evidence to demonstrate the propriety of the police conduct (People v Berrios, 28 NY2d 361; People v Whitehurst, 25 NY2d 389; People v Malinsky, 15 NY2d 86). This burden is one of production. (People v Sanders, 79 AD2d 688.) Here the People have failed to produce or preserve the bag from which the .357 revolver was taken. This court will then assume, as the defense claims and the officer believes, that the bag was flexible and of the duffel/canvas variety. If one were to pat down the outside of the bag, one would have been able to feel the contents contained therein.
After reviewing the pertinent appellate cases, certain rules can be discerned. The presence of reasonable suspicion permits a stop and frisk of a suspect for weapons as well as a frisk or pat down of any bag that he might be carrying or that is within his reachable area. (People v Brooks, 65 NY2d 1021, supra.) A bag that is flexible and whose contents can be felt by touching its exterior must be patted down and may be opened for a search only when after a pat down, the officer reasonably believes it contains a weapon. (People v Coleman, 215 AD2d 576, supra; People v Morales, 198 AD2d 129; People v Cartagena, 189 AD2d 67, supra; People v White, 156 AD2d 741, supra.) When, however, due to a closed container’s rigid exterior, its contents are not susceptible of being identified by touch, then a bag or container may be opened and visually inspected even absent probable cause especially if other aggravating factors are present (e.g., the person alleged to be carrying a weapon is on a busy street [People v Tratch, 104 AD2d 503, supra] or in a police station [People v Moore, 32 NY2d 67, supra], or if the safety of children is involved [People v Taggart, 20 NY2d 335]).
In the matter sub judice, the police officer immediately opened the closed bag after removing it from the defendant’s shoulder. The fact that the “bag had some weight” must be *405 evaluated in light of all the information possessed by the officer. The officer knew that the defendant worked at a construction site in the area. Thus, the weight of the bag could have been caused by tools or instruments used in the construction trade. Nonetheless, the reasonable suspicion possessed by the officer warranted a frisk or pat down of this flexible bag which would have enabled the officer to feel for a weapon. Had Officer Rodriguez first felt the bag and after such examination he had concluded that it contained a weapon, a full-blown search rather than a visual inspection would have been proper. However, because the bag was flexible and the officer could have discerned its contents by touching or feeling the exterior portion of the bag, an immediate opening of the bag for a visual inspection was legally impermissible.
Accordingly, the defendant’s motion to suppress the weapon recovered is granted.